## WILLIMAN v. WILLIMAN.

In a contest between a father and mother over the custody of their only child, a boy four and one half years old, where it appears that the mother voluntarily separated herself from her husband, whose conduct towards her was kind and considerate, and where the evidence is uncontradicted that the father is a man of high character and financially able and willing to care for and educate the child, and is a proper and fit person to raise him, and the evidence preponderates that it will be to the best interest of the child that he be intrusted with the father, it is an abuse of discretion to refuse to award the custody of the child to the father.

MAY 16, 1912.

Habeas corpus. Before Judge Bell. Fulton superior court. August 15, 1911.

*George P. Whitman* and *Anderson, Felder, Rountree & Wilson,* for plaintiff.

*J. McSwain Woods* and *Rollin H. Kimball,* for defendant.

EVANS, P. J. A writ of habeas corpus was sued out by Jacob Williman to recover from his wife the possession of their only child, a boy four and one half years old. On the hearing it appeared from the evidence that plaintiff and defendant married in November, 1904, and lived together until November 4, 1910, but for two years prior they had occupied separate sleeping-rooms in the same house. On that day the wife left her husband to visit an aunt at Grahamville, South Carolina, but, without returning home, she went to Los Angeles, California, where she was located by her husband. He found her living in a small cottage on the outskirts of the city, with a man named Taylor. Taylor and his wife had previously lived in the same house with the plaintiff and his wife, but Taylor had separated from his wife, who was suing him for a divorce; and he had left a position in Jacksonville, Florida, and accompanied the defendant to California. Here Tay-

lor secured a position, living in the same house with the defendant. In January, 1911, the plaintiff went to Los Angeles, found his wife and Taylor there, and brought his wife and child back to his home. She remained there several weeks; then she left her husband for Atlanta, stating to him upon leaving that she expected to live with her aunt at Kirkwood, near Atlanta, and that she never intended to live with him again. The plaintiff sent his wife $60 per month regularly for the support of herself and child. Taylor immediately gave up his position in California and came to Atlanta, where he frequently saw the defendant. The plaintiff is a member of one of the most highly respected families of Charleston, is himself a man of high character, making a good salary, and amply able to care for and educate the child. The defendant testified: that she never loved the plaintiff, but married him to get a home; that she left this State and went to California for the purpose of getting a divorce from him; that the plaintiff had never been cruel to her, and had always provided for her in every way, and treated her in a kindly manner; that when she determined to leave she called on Taylor to assist her in making the trip, and he loaned her the money to go, and accompanied her from St. Louis, at which place he joined her, and they lived in the same house in Los Angeles until her husband came for her; that she then moved to Kirkwood and was living with her aunt, from which place she moved to Atlanta, because the child was under the treatment of a physician; and that her brother came into Atlanta to live with her. The defendant's aunt testified that she had invited the defendant to live with her, but that she had no source of income; and her brother, who was making $10 per week, testified that he was willing to render her what financial aid he was able. The defendant owned some property in South Carolina, the extent and character of which was not disclosed. The court awarded the custody of the child to the mother.

Under the law of this State the father is the natural guardian of his minor child, and the right to the custody of the child is primarily in the father. Civil Code, §§ 3020, 3021; *Miller* v. *Wallace*, 76 *Ga.* 479 (2 Am. St. R. 48). In that case the rule is thus stated: "Prima facie the right of custody of an infant is in the father; and where this is resisted upon the ground of his unfitness for the trust, or other cause, a proper regard for the sanctity

of the parental relation will require that the objection be sustained by clear and satisfactory proofs; and a clear and strong case must be made to sustain an objection to the father's right." The right of the father is paramount, and should not be disregarded except for the best interest and welfare of the child. *Sloan* v. *Jones,* 130 *Ga.* 836 (62 S. E. 21). Under the evidence in this case we think the father was entitled to the custody of the child, and that the court's refusal to so award was an abuse of discretion.

*Judgment reversed. All the Justices concur.*