## 18166.　McLENDON *v.* DANIEL.

The evidence authorized submission to the jury of the question as to contributory negligence of the plaintiff, who was suing for damages on account of alleged malpractice of a surgeon.

In omitting the word "skill" and using different language from that of the code, the trial judge, in view of the evidence and of the remainder of his charge to the jury, did not commit an error which would entitle the plaintiff to a new trial, when, immediately after charging the rule laid down in the code, that a surgeon must exercise "a reasonable degree of care and skill" (Civil Code of 1910, § 4427), he charged that the plaintiff would not be entitled to recover if the defendant exercised "all ordinary and reasonable care, diligence, and prudence."

Upon the issue whether the defendant's service in setting the fracture should have been followed up by attending the patient in order to give any needed treatment, or whether this duty devolved upon the other physician, who, the defendant contended, was the physician in charge, and upon the other issues involved, the evidence warranted the jury's finding in favor of the defendant.

DECIDED DECEMBER 15, 1927.

Action for damages; from Colquitt superior court—Judge W. E. Thomas. April 15, 1927.

Physicians and Surgeons, 30 Cyc. p. 1570, n. 19; p. 1587, n. 78; p. 1588, n. 87 New, 88; p. 1589, n. 90.

Trial, 38 Cyc. p. 1779, n. 75.

The plaintiff, McLendon, who lived at the village of Funston, in Colquitt county, suffered a fracture of a limb on April 16, 1924. The evidence shows that he immediately called in Dr. Stripling, who lived near by, and that Dr. Stripling, with his approval, called in the defendant, Dr. Daniel, a resident of Moultrie, Georgia, who set the broken limb, and bandaged it with a plaster cast, after first wrapping it with a gauze bandage, but without the application of cotton batting between the bandage and the cast. The evidence, including the testimony of Dr. Stripling, appears to be undisputed that the limb was properly set and bandaged according to the method used, although Dr. Stripling testified that the better method would have been to employ the use of cotton batting as indicated above. All the testimony indicates, however, that the method actually used was one approved by the medical profession, the remedy in all such treatments in case of swelling being to slit the cast. There was also evidence to the effect that the use of cotton batting was not intended to obviate the necessity of cutting the cast in case of swelling, but only to make the limb more comfortable.

The evidence of the defendant was to the effect that he was called in only to assist in setting the limb, and that Dr. Stripling had general charge of the case; he testified that he instructed Dr. Stripling to cut the cast in case the swelling of the leg should render it necessary. This testimony was disputed by Dr. Stripling. The plaintiff and Dr. Stripling testified that after the setting of the leg, and during the first five days thereafter, they repeatedly called Dr. Daniel, advising him as to the painful condition of the patient, and asking that he return to render further attention to the case. This testimony was disputed by Dr. Daniel. Dr. Daniel testified that in passing the house of the plaintiff on April 21, five days after the limb had been set, he voluntarily stopped to see how the plaintiff was getting on, and that Dr. Stripling, seeing him enter the house, joined him there. The evidence is undisputed that during the period of five days indicated the limb had become swollen and diseased to the extent that certain of the tissues in the foot had died, and that the condition of the foot, on account of the constriction of the cast, when Dr. Daniel returned on April 21 was serious. There is no dispute by any one that the case, after the setting of the limb on April 16, up to the

cutting of the cast on April 21, was not properly handled, the contention of the plaintiff being that Dr. Daniel was responsible for the lack of proper treatment, while the contention of the defendant Daniel was that he had completed his connection with the case when he set the limb and turned it over to the regular attending physician. The evidence shows that after the bandage was removed by Dr. Stripling at the direction of Dr. Daniel on April 21, Dr. Daniel took up the treatment of the limb, he contending that he did so as the associate of Dr. Stripling, and the plaintiff and Dr. Stripling contending that Dr. Daniel was then acting as the attending surgeon in the case, and that Dr. Stripling was merely rendering friendly services to his neighbor. According to Dr. Daniel's testimony, this association with Dr. Stripling in the treatment of the case continued until some time in July, when Dr. Stripling left for Florida and he took complete charge of the case; and after taking complete charge he continued the treatment until some time in August when he was discharged by the plaintiff. The record shows that the limb was amputated above the knee on August 29 by another surgeon. The evidence is undisputed that after Dr. Daniel returned to the case on April 21 he removed certain diseased portions of the foot. The plaintiff testified that he besought the defendant to amputate the leg at that time. The record does not show what Dr. Stripling then counseled with reference to the amputation. The evidence of Dr. Daniel was that the amputation could not with propriety have been made at that time, as the line of demarcation had not become established as to where the diseased tissues extended; that he believed that the paring off of the diseased portions of the foot was the proper treatment at that time; that after such treatment granulation set in, and the condition of the patient showed improvement, and that he believed the leg and the major portion of the foot could have been thus saved but for the unsafe and improper conduct on the part of the plaintiff and the other physician in removing the limb from the fracture box into which it had been placed, and allowing the patient to be raised up in order to wash the limb by the side of the bed. He testified that the displacement of the setting as disclosed by the x-ray at the time of the amputation was thus occasioned. He testified also to the improper conduct of the plaintiff in walking about on crutches prior to the amputation.

The gist and effect of the plaintiff's allegations is to charge the defendant with a failure to exercise a reasonable degree of care and skill in the method employed in bandaging the limb, as has already been indicated; that he was guilty of negligence in neglecting the patient and in failing to return, diagnose and relieve the pressure caused by the swelling against the plaster cast until after it had resulted in the diseased condition of the tissues; and that the defendant failed to use a reasonable degree of care and skill after he returned to the treatment of the case in diagnosing and treating the gangrenous condition by reason of which it finally became necessary to amputate the limb above the knee.

The verdict was in favor of the defendant, and the plaintiff made a motion for a new trial, which was overruled, and he excepted. The special grounds of the motion can be resolved into two main exceptions, one that the court erred in charging as to contributory negligence on the part of the plaintiff, and the other amounting to an exception to the failure to charge the jury that even though the defendant may have been skilled in his profession, he was nevertheless charged with the duty to exercise reasonable care and skill in the performance of his duties as such, the contention being that the charge of the court relieved the defendant from liability if he exercised ordinary care, diligence, and prudence, even though he may not have exercised reasonable and proper skill. The portions of the charge upon which these exceptions are based are as follows: "The law provides that a person professing to practice surgery or the administering of medicine for a compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from the want of such care and skill will be a tort for which recovery may be had. If the plaintiff in the case has sustained his case as it is pleaded, if the evidence in the case sustains the plaintiff's case as it is pleaded, the plaintiff will be entitled to recover. The plaintiff can not recover if the defendant, Dr. Daniel, exercised all ordinary and reasonable care, diligence and prudence, or if the injury was caused by the failure of the plaintiff to exercise due care, of if both persons were at fault, and the plaintiff, by the exercise of due care, could have avoided the consequences to himself caused by the defendant's negligence, if you find that the defendant was negligent."

In another portion of the charge the court instructed the jury as follows: "If you believe the plaintiff called Dr. Daniel for the purpose of setting his leg only, and not to administer the subsequent treatment that might be needed, then the defendant, Dr. Daniel, would not be liable for anything that was done or anything that was not done but ought to have been done subsequent to the time he set the leg. He would not be liable for the failure to cut the plaster cast or loosen it, if he was called in merely to set the leg and not to render the necessary subsequent treatment." "Should you believe that the defendant, Dr. Daniel, was called in at first only for the purpose of assisting Dr. Stripling, but later on he took charge of the case, he would then, from that time on, be bound to exercise ordinary care and skill in the treatment of the leg. However, the defendant, Dr. Daniel, would have a right to refuse under these circumstances to amputate plaintiff's leg when he needed it amputated, if he had not agreed to do it, provided he fully and fairly advised the plaintiff, McLendon, that he would not amputate it, and informed him he would have to employ other surgeons for this purpose."

*E. K. Wilcox, Dowling & DeLoache,* for plaintiff.

*J. O. Gibson, J. H. Hill, Brock, Sparks & Russell,* for defendant.

JENKINS, P. J. (After stating the foregoing facts.) 1. In this suit for damages on account of alleged malpractice by a surgeon, it was not error, in view of the testimony submitted authorizing the same, for the court to submit to the jury the question of contributory negligence on the part of the plaintiff.

2. "A person professing to practice surgery or the administering of medicine for a compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill will be a tort for which a recovery may be had." Civil Code (1910), § 4427. This standard, when applied to the facts and circumstances of any particular case, must be taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by the profession generally. *Fincher* v. *Davis,* 27 *Ga. App.* 494 (5) (108 S. E. 905). It has been held that it is not the mere possession of the requisite professional skill, but its exercise, which is required. *Akridge* v.

*Noble,* 114 *Ga.* 949 (41 S. E. 78) ; *Hinkle* v. *Smith,* 12 *Ga. App.*
496 (77 S. E. 650) ; *Grubbs* v. *Elrod,* 25 *Ga. App.* 108 (102
S. E. 908). In the instant case, where the plaintiff sought to
establish lack of care and skill in setting and bandaging a frac-
ture, in failing thereafter to attend the patient in order to diagnose
his condition and administer such treatment as developments
rendered necessary, and in failing, after subsequently resuming
treatment, to properly diagnose and treat the diseased condition
which had arisen, and where the court charged the jury in the
language of the code-section quoted, to the effect that the defend-
ant was required to exercise a reasonable degree of care and skill,
instructing them immediately thereafter that if the plaintiff had
sustained his case as laid he would be entitled to recover, but not
so if the defendant "exercised all ordinary and reasonable care,
diligence, and prudence," it would not seem that a verdict in favor
of the defendant should be set aside on the theory that the court,
after thus twice explicitly charging that the plaintiff could recover
if the defendant had failed to exercise care and skill, nullified this
instruction when, in stating the converse of the proposition, he
used the words "care, diligence and prudence" instead of the
words "care and skill." But even if the instruction indicated
must needs be taken as so inaccurate as would, under ordinary
circumstances, necessitate the granting of a new trial, such would
not be the case where, as here, it is shown, without dispute, that
all reasonable care and skill were used in the setting of the frac-
ture according to a method approved by the medical profession,
and where it appears that, so far as the alleged neglect in fail-
ing to attend the patient after the limb had been set is concerned,
the defense set up by the defendant was not that the patient had
been properly looked after, not that he had received either care or
skilled attention, during the period immediately following the
setting of the fracture, but that such neglect was not his neglect,
but the neglect of another physician, who had the case in charge,
and where, so far as relates to the subsequent treatment given by
the defendant after he had again taken hold of the case, the court
specifically, and without any sort of possible qualification or
equivocation, charged the jury that the defendant was required to
exercise all reasonable care and skill.

3. The pressure of the case centered upon the disputed issue

34

with respect to the second allegation of negligence; that is, whether the defendant's service in setting the fracture should have been followed up by attending the patient in order to render any needed treatment, or whether this duty devolved upon the other physician, who, the defendant contended, was the physician in charge. Upon this issue, as upon the other disputed issue involved in the third allegation of negligence, the evidence, while in conflict, was such as fully to warrant the jury's finding in favor of the defendant.

*Judgment affirmed. Stephens and Bell, JJ., concur.*