## 21819. RADCLIFFE v. MADDOX.

Decided September 21, 1932.

*Maddox, Matthews & Owens,* for plaintiff in error.

*Porter & Mebane, Hugh Reed,* contra.

JENKINS, P. J. (After stating the foregoing facts.)

■ "A person professing to practice surgery or the administering of medicine for a compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill will be a tort for which a recovery may be had." Civil Code (1910), § 4427. The standard of care and skill fixed by the statute, when applied to the facts and circumstances of any particular case, must be taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by the profession generally. *Fincher* v. *Davis,* 27 *Ga. App.* 494 (5) (108 S. E. 905) ; *McLendon* v. *Daniel,* 37 *Ga. App.* 524, 528 (141 S. E. 77). Whether, in any given case, this degree of care and skill has been exercised is a question of fact for determination by the jury. *Akridge* v. *Noble,* 114 *Ga.* 949 (41 S. E. 78) ; *Edwards* v. *Roberts,* 12 *Ga. App.* 140 (76 S. E. 1054).

The evidence in the instant case was in sharp conflict. According to the testimony of the defendant, and of other witnesses who were present when the broken leg of the decedent was first set, the operation was skilfully performed, and every reasonable precaution against infection was taken. We think, however, that the testimony of these witnesses was contradicted by that of the father of the decedent, and by that of Dr. Gramling and lay witnesses who were present when Dr. Craven made his first examination after the decedent returned from the Rome hospital the first time. According to the testimony of the decedent's father, the broken limb was covered with tractor oil and grease when he saw it just prior to the second operation when the defendant made an incision for the purpose of wiring together the ends of the broken bone. While this witness did not know, and did not undertake to testify, that after he saw the limb and before the second operation, the limb was not thoroughly cleansed, and his testimony, standing alone, could not be said to contradict that of the defendant and the other persons who were present when the second operation was performed, the testimony of Dr. Gramling corroborates that of the decedent's father, and clearly contradicts that on behalf of the defendant. Since the defendant had testified, as had the other witnesses in

his behalf, not only that the leg was thoroughly cleansed prior to the first operation, but that it was again thoroughly cleansed prior to the second operation, on which occasion the cast was removed and an incision made, Dr. Gramling's testimony, which the jury were authorized to believe, that when he made an examination the following November he found oil and grease on the broken limb, was directly contradictory of the testimony of the defendant. It does not appear that after the second operation by the defendant the plaster cast was ever removed until Dr. Gramling removed it, but it appears that a "window" was cut into it, and the wound where the incision was made was treated through this "window." Accordingly, if the jury believed Dr. Gramling, as they evidently did, they were authorized to find that the oil and grease which he found in November had been left there by the defendant when the cast was put on by him in July; and they were authorized to find that this oil and grease got on the limb when the tractor was overturned in June. There does not appear to be any dispute that the decedent had an infection in the broken limb, and the evidence amply authorizes the conclusion that this infection was the direct and proximate cause of his death. We think the jury were authorized to say, under all the conflicting testimony, that the infection resulted from the failure of the defendant to properly cleanse the limb when he operated on it. It can not be said, therefore, that the evidence did not authorize the verdict.

■ Exception is taken to the following charge of the court: "I charge you that a fact may be proven either by direct or by circumstantial evidence. Direct evidence is that which points immediately to the question at issue. Indirect or circumstantial evidence is that which only tends to establish the question at issue by proof of various facts, sustaining by their consistency the hypothesis claimed. Presumptive evidence consists of inferences drawn by human experience from the connection of cause and effect, and observations of human conduct. Where a plaintiff in a civil case supports his action solely by circumstantial evidence, before he is authorized to have a verdict in his favor the testimony must be such as to reasonably establish the theory relied upon, and to preponderate to that theory rather than to any other reasonable hypothesis. While in such cases the sufficiency of the evidence is for the jury, yet before there is, in legal contemplation, any evidence, the circum-

stances shown must, in some appreciable degree, tend to establish the conclusion claimed. A mere scintilla of inconclusive circumstances, giving no scope for legitimate reasoning by the jury, does not carry the burden of proof." Error is assigned on the ground that the judge not only should have charged that the circumstances shown must tend in some appreciable degree to establish the conclusion claimed, and preponderate to that conclusion as against all other reasonable hypotheses, but should have charged also that they must exclude every other reasonable hypothesis.

The excerpt from the charge is taken from *Georgia Ry. & El. Co.* v. *Harris*, 1 *Ga. App.* 714 (57 S. E. 1076), in which the court was dealing with what amount of circumstantial evidence would authorize this court to uphold the finding of a jury based thereon. In determining this question, that is, whether or not there is any evidence to support the verdict where the plaintiff in a civil action relies solely upon circumstantial evidence to establish his cause of action, the appellate court will look to the testimony; and before the verdict can be allowed to stand, it must appear that the circumstances shown tend in some appreciable degree to establish the conclusion claimed. It is for the jury to say whether or not they preponderate to that theory as against all other reasonable, but less probable, hypotheses. As stated in the *Harris* case, "the established fundamental rules applicable to circumstantial evidence are the same in civil cases as in criminal trials. In both cases it is required that the circumstances relied upon be not only consistent with the conclusion sought to be established, but also inconsistent with every other reasonable hypothesis. In civil cases this consistency with the one and inconsistency with the other is required to be established by a mere preponderance; in criminal cases to the exclusion of reasonable doubt." Where the circumstances shown do, as a matter of law, in some appreciable degree tend to establish the hypothesis claimed, and in the minds of the jury preponderate to that hypothesis rather than to any other reasonable hypothesis, this is the equivalent of excluding all such other less probable hypotheses. In other words, the jury could not find that circumstantial evidence of real probative value preponderated in favor of one theory as against all other reasonable but less probable theories, without excluding the theories thus rejected. In neither criminal nor civil cases is it required that the proved circumstances shall show con-

sistency with the hypothesis claimed and inconsistency with all other reasonable theories to the point of logical demonstration. In civil cases all other reasonable theories are excluded when proved circumstances of real and actual probative value cause the jury to find that the preponderance of the evidence is in favor of the hypothesis claimed, as against all other reasonable but less probable theories. Where a decision is required between two or more antagonistic theories, an authorized finding that the evidence preponderates to one theory as against all the others necessarily carries with it a finding that the rejected theories are excluded.

The court instructed the jury as follows: "In this case it is for you to determine, from the evidence, as to whether or not the defendant in this case, in the treatment of Johnnie Maddox, did bring to the exercise of his profession a reasonable degree of care and skill. If he did the defendant would not be liable in this case, but if he did not, and the plaintiff sustained a loss as a result of the failure on the part of the defendant to bring to the exercise of his profession a reasonable degree of care and skill, and the plaintiff has sustained loss and is entitled to recover under the rules of law given you and which will be hereinafter given you, you would be authorized to find for the plaintiff." The exception to this charge is upon the ground that it failed to instruct the jury that the loss sustained by the plaintiff must result proximately and directly from the failure of the defendant to exercise the degree of care and skill required of him. The court, in the excerpt complained of, did not purport to state all the law of the case, and the instruction as given could not reasonably have misled the jury into believing that the plaintiff could recover in the event negligence on the part of the defendant was shown, whether the death of the decedent proximately resulted from such negligence or not. An examination of the entire charge shows that the court fully instructed the jury in this respect, as follows: "Even though you may find that the defendant failed to exercise the degree of care and skill required by law, that would not be sufficient to authorize a verdict for the plaintiff, but under the law the burden would still be on her to prove by a preponderance of the evidence that the defendant's failure to exercise that degree of skill and care was the direct and proximate cause of the death of her husband, and in determining this question you will consider the evidence as to the

condition of her husband when he passed from under the defendant's care, the treatment he received and the operations performed upon him by other physicians and surgeons, the reasons therefor, and the effect thereof on him, and the evidence relating to the cause of his death." If there was any possible error in the excerpt complained of, in view of the instruction just quoted it could not have been harmful to the defendant.

■ Exception is taken to the following charge of the court: "Where the negligence of a party defendant is not the natural and proximate cause of the injury, but the injury is traceable to the imposition of a separate and independent agency, the defendant can not be held responsible for the injury. The general rule is that if, subsequent to the original wrongful or negligent act, a new cause intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote; still if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequence could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer, the causal connection is not broken and the original wrongdoer is responsible for all of the consequences resulting from the intervening act. Negligence shall be the proximate cause of the injury, and it must be such that a person of caution and prudence would have foreseen that some injury would likely result therefrom, and not that the specific injury would result." The exception taken is on the ground that the charge in effect instructed the jury that if the defendant could reasonably have anticipated or foreseen that infection would develop in the injured leg, he would be responsible for the consequences arising from such infection, irrespective of whether or not such infection was the result of any negligent act on the part of the defendant. The charge was not erroneous, but was in accordance with the law as enunciated by this court and by the Supreme Court. *Southern Ry. Co.* v. *Webb,* 116 *Ga.* 152 (42 S. E. 395) ; *Hardwick* v. *Figgers,* 26 *Ga. App.* 494 (106 S. E. 738) ; *Gillespie* v. *Andrews,* 27 *Ga. App.* 509, 510 (108 S. E. 906) ; *Walters* v. *Berry Schools,* 40 *Ga. App.* 751, 752 (151 S. E. 544).

■ Exception is taken to the following charge of the court: "If the plaintiff is entitled to recover, I charge you (that is, recover under the rules I have given you in charge) that the plaintiff

would be entitled to recover the value of the life of the deceased at the time of the homicide. In ascertaining the amount of damages to be allowed in this case, if you allow any, the jury are not restricted to any fixed rule in the mode of estimating the value of the life of the deceased. The age of the deceased, the health he enjoyed, the money he was making by his labor, his habits, his probable loss of employment, his voluntary abstaining from work, dullness in business, reduction of wages, the increasing infirmities of age, with a corresponding diminution of earning capacity, and other causes which may contribute in greater or less degree to decreasing the gross earnings of a lifetime, may all be considered by the jury in determining the value of the life of the deceased. In estimating damages a proper allowance and deduction should be made in favor of the defendant for any diminution in income from labor which would have resulted, in your opinion, from any of those causes. In ascertaining the value of the life, you will consider the deceased's age at the time of his death, the length of time he would probably have lived, the amount per annum which he was earning, as such amount may be developed from the evidence before you, and any other facts which will enable you to arrive fairly and impartially, acting under your consciences and your oaths as impartial jurors, at the value of that life. When you ascertain what was the gross amount of the value of that life, it would be your duty to reduce that amount to its present cash value, figured at the rate of seven per cent. per annum. The present worth of a given sum is arrived at by dividing a given sum by one dollar plus the legal rate of interest, seven per cent., for the given time." We see no error in this instruction. Under the Civil Code (1910), § 4425, the measure of damages in cases of wrongful death is "the full value of the life of the deceased, as shown by the evidence," which is defined by that section to be "the full value of the life of the deceased without deduction for necessary or other personal expenses of the deceased had he lived." A charge in the language of the code has been held to be sufficient. *Central of Ga. Ry. Co.* v. *Newman,* 138 *Ga.* 145 (2) (74 S. E. 1077). The charge did not instruct the jury that there was no fixed mode of arriving at the damage to the plaintiff, but instructed them that there was no fixed mode of arriving at the value of the life of the deceased. It instructed the jury, substantially in the language of the code, that

the measure of damages was the value of the life of the decedent, reduced to its present cash value, and that in arriving at the value of the life they should consider the various things enumerated by the charge. If a fuller instruction was desired, it should have been requested.

■ It can not be said that the verdict for $6,000 was so excessive as to indicate prejudice or bias on the part of the jury. The evidence indicated that the decedent was twenty-one years of age, and in perfect health prior to his receiving the injury to his leg, and that he was earning at the time at least $1.50 per day. There was evidence from the father of the decedent that he was capable of earning $100 per month. While this evidence was clearly an expression of opinion on the part of the witness, it does appear that the decedent was working as a cropper on halves, and at the time of the accident was being paid $1.50 per day for his labor.

We see no error in the voluminous record such as would justify the grant of a new trial.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*