## 28167. LORD *v.* CLAXTON.

DECIDED APRIL 18, 1940.

530

*R. Earl Camp, W. A. Dampier, Emory S. Baldwin Jr.,* for plaintiff.

*R. M. Daley, R. I. Stephens,* for defendant.

Sutton, J. (After stating the foregoing facts.)

1. The allegations of the petition as amended clearly set forth a cause of action. It is shown that the defendant and two others, Dr. and Mrs. New, brother-in-law and sister, respectively, of the plaintiff, entered into a conspiracy to commit a tort upon her for

named purposes; and numerous acts in pursuance of such conspiracy are set forth in startling revelation. It is alleged that the plaintiff entered the hospital of the defendant for the sole purpose of having him perform an operation for a tumor, the removal of which she had been advised by the defendant would not require more than an operation and hospitalization beyond a period of twelve days; that the operation was perfectly performed on June 25, 1937, and that she immediately came from under the influence of the anesthetic and was entirely conscious and rapidly gaining her strength to such an extent that she planned to return to her home on July 6, 1937, but that on July 5, 1937, the defendant, through consultation and conspiracy with the others above named, forcibly required her to take an injection into her arm, which completely doped and dumfounded her faculties and began an involuntarily imprisonment of her, unnecessary, inexcusable, and unlawful, for a period of four and a half months; that after the first injection, and during the incapacity thus imposed upon her, dope or some other drug was administered to her at intervals to keep her in an unconscious condition; that this was permitted by the defendant and he himself administered the dope or drug, wilfully and maliciously, in conjunction with the other named conspirators, to injure and damage her thereby; and that this drug was given her to keep her unconscious and to deprive her of her mental faculties, and was only a scheme and device entered into by said persons for the purpose of injuring, damaging, and humiliating her, to prevent her recovery, and to allow Dr. and Mrs. New to carry out their scheme and plan of obtaining certain of her personal property and to take over and manage her estate; that the defendant did not give her proper medical treatment after the operation, but instead conspired with the other named persons to postpone acquisition of the plaintiff's mental faculties until they acquired her property, both real and personal; that the defendant, through such conspiracy, gained a hospital and doctor's bill of $1500, which was unnecessary and unjust; that during her incapacity and imprisonment the two other named conspirators were permitted to enter her hospital room, against her previous instructions to the defendant, and committed upon her, in numerous particulars, certain wrongs, interfering in her private affairs and confiscating her bank account, and through directions given to the nurses and hos-

pital authorities continuing her imprisonment, with the result that, whereas she should have sustained only a reasonable expense of $210 for the operation and hospitalization for the period in which she should rightfully have been kept there, she was by the acts of the defendant and the other two named persons deprived of $2824.45, and in addition she was caused to sustain other unnecessary items of expense in the sum of $695.49; that her special damages aggregate $3520.41, representing an unlawful confiscation of her property; that the defendant and Dr. New conspired for pecuniary purposes, and went to plaintiff's friends and demanded her diamond, and the defendant falsely reported that the plaintiff was permanently crazy, all of these acts on his part being with the purpose and intent of aiding and abetting Dr. and Mrs. New in the scheme to obtain possession, custody, and control of her personal property and to frustrate any mode of alienation of her property; that the defendant, in conspiracy with them, continued for months to keep her doped and unfit to attend to her own business, and caused her to incur hospital bills, nurses' bills, doctor's bill, medical bills, lawyer's fees and other expenses; that the defendant well knew that she was able to go to her home if he ceased to administer the dope or other powerful drug which kept her in a semiconscious condition and greatly weakened and emaciated her; that she suffered great mental pain and anguish because of such unjust detention and being doped; that even when her mind had cleared the defendant refused to release her and she was forced to employ counsel to effect her release; that the defendant did not exercise towards her the degree of care and skill required of a physician, and, at the instance of Dr. and Mrs. New, was guilty of malpractice, and her damages, general and special, have flowed from a want of due care, skill, and diligence, for all of which the defendant and Dr. and Mrs. New are jointly liable. Judgment was prayed in the sum of $25,000 against the defendant.

Under the allegations of the petition as amended, the duty of the defendant towards the plaintiff was twofold: firstly, as a surgeon and physician employed to remove a tumor from her person; and secondly, as the operator of a private hospital in which she became his patient. "A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill.

Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had." Code, § 84-924. The standard prescribed by the Code, "when applied to the facts and circumstances of any particular case, must be taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by the profession generally." *McLendon* v. *Daniel,* 37 *Ga. App.* 524, 528 (141 S. E. 77); *Hughes* v. *Weaver,* 39 *Ga. App.* 597 (148 S. E. 12); *Radcliffe* v. *Maddox,* 45 *Ga. App.* 676, 680 (165 S. E. 841). The physician must not only have the requisite care and skill, but must exercise these qualifications. *Hinkle* v. *Smith,* 12 *Ga. App.* 496 (77 S. E. 650); *Grubbs* v. *Elrod,* 25 *Ga. App.* 108 (102 S. E. 908); *McLendon* v. *Daniel,* supra; *Richards* v. *Harpe,* 42 *Ga. App.* 123 (11) (155 S. E. 85); *Chapman* v. *Radcliffe,* 44 *Ga. App.* 649 (162 S. E. 651). "A private hospital in which patients are placed for treatment by their physicians, and which undertakes to care for the patients and supervise and look after them, is under the duty to exercise such reasonable care in looking after and protecting a patient as the patient's condition, which is known to the hospital through its agents and servants charged with the duty of looking after and supervising the patient, may require." *Emory University* v. *Shadburn,* 47 *Ga. App.* 643 (171 S. E. 192); *Stansfield* v. *Gardner,* 56 *Ga. App.* 634 (193 S. E. 375); *Tate* v. *McCall Hospital,* 57 *Ga. App.* 824, 827 (196 S. E. 906). Of course the duties do not end until the relation of patient and physician and patient and hospital has ceased. The petition as amended alleges that the defendant failed to exercise the care and skill required of him as a physician, and also shows the failure of the defendant, as operator of the hospital, to fulfill his duty of protecting the plaintiff as a patient. But it goes farther, and illustrates the lack of care and skill and proper attention by allegations of wilful and wanton misconduct which is the antithesis of care and skill. The defendant was employed to perform an operation. It was successful. Instead of ministering to her in such a way as to facilitate her recovery of good health, it is alleged that she was forced by the defendant, through consultation and conspiracy with the other two named conspirators, to submit to an injection of dope or other powerful drug, and that this rendered her incapable for several months of resisting the unlawful practices named. "Where a

surgeon enters into an agreement with a person merely to perform a certain operation, and the surgeon in violation of the contract goes farther, without an emergency, and performs another operation which is unauthorized by the agreement, or by an emergency necessitating the additional operation, and injury results to the patient, the surgeon can not relieve himself from liability by showing skill and care in the other operation." *Perry* v. *Hodgson,* 168 *Ga.* 678 (148 S. E. 659). Conceivably it might sometimes become necessary for a physician or surgeon to administer a drug to a patient; but it is here alleged that the injection was only in consequence of a detailed conspiracy to incapacitate rather than to help her. No matter how expertly or skilfully the dope or drug may have been administered, if such act was unnecessary and was resorted to only for the purpose of retarding or frustrating her recovery, it obviously would not measure up to the requirements of the law that a physician must exercise towards a patient a reasonable degree of care and skill in an authorized act, and that a hospital must exercise reasonable care in supervising and protecting a patient. The petition as amended charges against the defendant, not only the failure to exercise reasonable care and skill for her welfare, but wilful and wanton misconduct, and the ground of the demurrer that no cause of action was set forth is clearly without merit.

2. Nor is the petition as amended subject to dismissal on the ground that it is duplicitous, in that, as averred, it sets forth two distinct causes of action, one based on a conspiracy and one based on the alleged malpractice of the defendant. " 'Where civil liability for a conspiracy is sought to be imposed, the conspiracy of itself furnishes no cause of action. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done.' *Woodruff* v. *Hughes,* 2 *Ga. App.* 361 (58 S. E. 551); *Wall* v. *Seaboard Air-Line Railway,* 18 *Ga. App.* 457 (2) (89 S. E. 533). It was further said, in *Woodruff* v. *Hughes,* supra: 'Conceding, then, that an averment that the acts alleged were done in pursuance of a conspiracy does not change the nature of the action or add anything to its legal effect, the allegation and proof of conspiracy is important to the action only because it will enable the plaintiff to recover his damages against such of the defendants as may be shown to be guilty of the tort, even should he fail to prove a conspiracy or concerted design; and it may be

pleaded and proved as aggravating the wrong of which the plaintiff complains and to enable him to recover against all the defendants as joint tort-feasors. If the conspiracy can be proved, the party wronged may look beyond the actual participants committing the injury and join with them as defendants those who conspired to accomplish it.' While the allegation of conspiracy may well serve the purpose dealt with in the above-quoted language, it does not of itself constitute a cause of action." *Liberty Mutual Insurance Co.* v. *Lipscomb,* 56 *Ga. App.* 15, 19 (192 S. E. 56). The present action is solely in tort, the allegations of conspiracy being material only to enable the plaintiff to recover damages against such of the alleged conspirators as may be shown to have participated in the unlawful design.

3. The allegations of the petition that the defendant, in conspiracy with Dr. and Mrs. New, required the plaintiff to take an injection into her arm, etc., beginning an involuntary imprisonment of her in the hospital, etc., were not subject to the objection in the special demurrer that they "were argumentative, representing only conclusions of the pleader, with no allegations of fact authorizing or justifying such conclusions." We think that the allegations set forth traversible facts, both as to the injection of the dope and as to her involuntary detention in the hospital, sufficiently to inform the defendant of what he is called on to defend against and to enable him to prepare his defense.

4. From what is said above it follows that the trial court erred in sustaining the defendant's demurrers to the petition as amended, and in dismissing the action.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*