40163. EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY et al. v. DYER.

DECIDED NOVEMBER 7, 1963.

*Smith, Swift, Currie, McGhee & Hancock, Glover McGhee,* for plaintiffs in error.

*Pittman & Crowe, C. C. Pittman,* contra.

BELL, Presiding Judge. This is a workmen's compensation appeal where the principal issue is whether the evidence supported the findings of fact and the award. The case is complicated by evidence of an automobile accident in which the claimant was severely injured which occurred subsequent to the injury on the job and after the claimant had been discharged from the hospital following an operation for a ruptured disc but before he had been authorized by his doctor to return to work. The automobile accident occurred prior to the hearing before the board. An award was entered by the board in claimant's favor and was affirmed on appeal by the superior court. Exceptions are brought to the judgment of the superior court affirming the award of the board.

■ The plaintiffs in error contend that there is no evidence in the record to support the findings by the board that the injury suffered by the claimant arose out of and in the course of his employment.

The claimant testified that on May 1 and May 2, 1961, the last two nights he worked prior to his disability, his job involved the removal of a duct under the floorboard of an airplane. The performance of this work required him to be in a strained posture on his knees and from that position to reach and to throw the weight of his body on his back. At the end of the shift on May 2, he was completely exhausted and reported this condition to his supervisor. He did not rest well that night. The next morning as he stooped to tie his shoe he was seized with cramps in his leg. He went to see his doctor that day who

diagnosed his disability as "acute lumbosacral strain and possibly ruptured disc." On May 30, 1961, he underwent an operation for a ruptured intervertebral disc.

It is conceded by the plaintiffs in error that various expert witnesses testified that a disc in one's back can be ruptured by bending to tie one's shoes as well as by some other traumatic experience. This concession necessarily includes the inverse situation, i.e., that the injury could have resulted from working in the strained position as well as by bending to tie a shoe. This presented an issue of fact which the board resolved in the claimant's favor. "Where a decision is required between two or more antagonistic theories, an authorized finding that the evidence preponderates to one theory as against all the others necessarily carries with it a finding that the rejected theories are excluded." *Radcliffe v. Maddox,* 45 Ga. App. 676, 683 (165 SE 841) ; *Ideal Mutual Ins. Co. v. Ray,* 92 Ga. App. 273 (88 SE2d 428) ; *Ga. R. &c. Co. v. Harris,* 1 Ga. App. 714, 716 (1) (57 SE 1076).

The evidence authorized the finding that the injury arose out of and in the course of claimant's employment.

■ The plaintiffs in error contend that notice of the claimant's injury was not given to the employer as required by *Code* § 114-303.

The record shows that claimant: reported to his supervisor on May 2, 1961, at the end of his shift, that he was "completely exhausted" and was asked by the supervisor to report to the employer's medical department; reported to the employer's medical clinic "on the fourth night after I had gotten my back hurt on the second"; was treated by the company doctor "for injury to lower back"; and that he was given a temporary medical limitation slip at the employer's clinic which he delivered to his supervisor. This is sufficient evidence to authorize the finding by the board that the claimant complied with the mandate of *Code* § 114-303 by giving the requisite notice of the injury to the employer. "We think a notice is sufficient which will put the employer on notice of the injury so that he may make an investigation if he sees fit to do so." *Railway Exp. Agency v. Harper,* 70 Ga. App. 795, 796 (1) (29 SE2d 434).

■

■ The evidence authorized the finding that claimant was permanently disabled from May 2, 1961, the date of his injury on the job, continuously through the period required for the diagnosis of his condition, the hospitalization period for corrective surgery, and for a convalescence period of from eight to ten weeks after July 1, 1961, at the end of which Dr. [B] estimated he would be able to return to work.

After being released from the hospital following his operation for the ruptured disc, misfortune again plagued the claimant with the occurrence of an automobile accident on July 6, 1961, in which he was severely injured. It is undisputed that the accident had no connection with claimant's employment, nor that claimant received additional and severe injuries from it. Understandably, it is strenuously urged by plaintiffs in error that the claimant's disability comes from the automobile accident and not from the employment injury. The record, however, refutes this contention.

Dr. [T], the company doctor, testified that ordinarily in operations for ruptured intervertebral discs results are excellent and the disability might be *only* 20 percent. Dr. [B], who performed the surgery, testified the usual estimate is that there is a permanent disability of between 10 and 15 percent but that in this claimant's case, due to an existing congenital defect unaffected by the operation, which makes it advisable for him to take better care of his back than the ordinary ruptured lumbar disc patient, this claimant's permanent disability might be increased from 20 to 25 percent. This disability, the doctor testified, is not related to the intervening automobile accident.

The testimony is sufficient to support the finding by the board that this employee, without consideration of the additional injuries suffered in the automobile accident, was capable of earning only 75 percent of his previous earnings and entitled, therefore, to compensation under *Code Ann.* § 114-405, subsequent to September 1, 1961, for partial incapacity.

When considering the beneficent purposes of the workmen's compensation law and the liberal construction which the courts are required to accord it, we cannot sanction a deprivation of benefits to an employee because of any subsequent noncompen-

sable accident where the evidence before the board has established that the employee suffered a temporary total incapacity coupled with a permanent partial incapacity from a prior compensable casualty.

*Judgment affirmed. Hall and Pannell, JJ., concur.*