## PACE v. COCHRAN.

1. In a suit to recover damages for injuries alleged to have resulted from the negligent "setting" of a broken arm by a physician and surgeon, it was error to overrule a ground of demurrer which sought to have a photograph "of the present condition" of the injured member stricken and removed from the petition.

2. The amendments to the petition, as set out in the 2d division of the opinion, are not open to the objection that they set out a new cause of action. They merely amplify the original cause of action as set out in the petition.

3. The Civil Code, § 4427, declares: "A person professing to practice surgery or the administering of medicine for a compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill will be a tort for which a recovery may be had." This lays down a terse rule for determining under what circumstances a physician is liable for injury resulting to a patient.

(a) The charge which was approved in *Akridge v. Noble*, 114 *Ga.* 949 (41 S. E. 78), as against certain objections thereto, was not identical with the charge complained of in the 4th ground of the amended motion for a new trial; nor should a charge of that character be given where inapplicable.

(b) While expressions used in an opinion by a Justice of the Supreme Court in discussing a case under review may be entirely proper for that purpose, it does not follow as a matter of course that they are apt for use in a charge to a jury in another case. They may not apply to the facts of the second case, or they may be argumentative in character, or otherwise not suited to be given as instructions in a different case, however correct they may have been as used in an opinion.

(c) Some of the charges complained of, in regard to the skill and diligence required of one holding himself out to the public for the practice of surgery, were not unobjectionable in the mode of expression employed, or in being accurately adjusted to the evidence in the case then being tried.

4. It is reversible error to charge the jury that "Where witnesses agree as to the material facts testified to by them, slight discrepancies as to collateral, attendant facts affords no sufficient legal reason for discrediting their testimony."

5. Under the allegations of the petition and the evidence introduced on the trial of the case, the court was authorized to charge the jury the rule as to estimating damages on account of pain and suffering.

6. On the trial of a case involving malpractice of medicine and surgery, a photograph of the wound alleged to have been caused by the malpractice, which has been proved to be a correct photograph, is admissible in evidence as tending to show the details and extent of the injury, in connection with other evidence tending to show that the condition of the injured member at the time when the photograph was taken resulted from the alleged tort.

NOVEMBER 12, 1915.

Action for damages. Before Judge Patterson. Cobb superior court. December 5, 1914.

B. B. Cochran Jr., an infant within the age of 21 years, who sued by B. B. Cochran, his next friend, alleged in his petition substantially as follows: W. T. Pace is a practicing physician and

surgeon for compensation at Smyrna and the vicinity thereof, and has damaged petitioner in the sum of $15,000 as hereinafter set out. At 5 o'clock p. m. on December 25, 1911, the infant plaintiff fell off the porch of H. F. Cochran, a distance of approximately three feet, and his right arm was injured by the fall. Immediately after the accident the defendant was sent for and arrived within an hour's time, and after examination he pronounced the plaintiff's right arm broken in the elbow, and proceeded "to set" the arm; on which he put two boards, one on each side, leaving the arm perfectly straight, with the boards tied tightly around it with a bandage. The defendant then brought the arm around in front of plaintiff's body, breaking the board, and said that it would be all right and for the plaintiff to keep his arm in that condition for a period of 28 days. The defendant administered an anesthetic to the plaintiff during the time he set the arm. In setting the arm he left the little finger bent down, and bandaged it in that shape, thereby stopping the circulation in the little finger, "causing infection to set in, and causing the same to rot off." After defendant set the arm he said it had been broken above the elbow instead of at the elbow. It was alleged, that defendant negligently set plaintiff's arm and after setting it broke the board, a part of which stuck in the flesh above the elbow, and part of it stuck in the flesh at the root of his thumb, and then bound it so tight that great sores came all over the hand and fingers, and also at the elbow where the board went in the flesh, finally covering the entire arm, and as a result "the little finger rotted off" and his whole hand became disfigured, and he has no use of his right hand at all, nor his fingers nor his thumb on that hand, and will have no use of it the remainder of his life; his hand is "perishing away" and is disfigured and useless, and his condition was caused solely by not having the proper attention on the part of the defendant when it was first set, and it was the want of due care, skill, and diligence on the part of the defendant, and in grossly failing to do his duty as a physician and surgeon, which caused the injuries and damages hereinbefore set out, etc.; that the defendant did not exercise any reasonable amount of care and skill "in doctoring" plaintiff's right hand and arm, and his negligence in not looking after petitioner and causing his permanent injury "was criminal negligence, wilful and malicious and without cause." Plaintiff is

7 years old, and before his injury he was in perfect health physically and his right arm was in good shape, but as a result of the injury it is forever useless and disfigured for life; before the injury and the treatment by the defendant plaintiff's right hand and arm were normal, but now are so disfigured as to be horrible and useless. Plaintiff attaches a photograph of the present condition of his hand, caused by the negligence of the defendant, and makes it a part of his petition.

The defendant filed his answer, denying all the material allegations of the petition, and averred specially that "The allegations of said paragraph as to the manner in which this defendant treated the plaintiff are preposterous and emphatically denied. To the contrary of said allegations, this defendant treated the plaintiff with all due care and skill, and was wholly without fault or negligence in and about the same. The alleged conditions recited in said paragraphs did not result and could not have resulted from this defendant's treatment of the plaintiff."

The jury returned a verdict for the plaintiff. A motion for a new trial was overruled, and the defendant excepted.

*C. H. Griffin,* for plaintiff in error. *Clay & Morris,* contra.

HILL, J. (After stating the foregoing facts.)

1. The defendant filed a demurrer to so much of the 10th paragraph of the petition as refers to a photograph "of the present condition" of the plaintiff's hand and arm, and moved the court that the same be stricken and the photograph removed from the petition and taken out of the record and excluded from the consideration of the jury. The court overruled the demurrer, and allowed the photograph to remain attached to the petition. To this judgment the defendant excepted pendente lite. We think the court erred in not sustaining the demurrer, and in not having the photograph detached from the petition. To allow the photograph showing the condition of the plaintiff's hand at the time of the filing of the petition to remain so attached is to allow the plaintiff to plead the evidence, which should not be done. Suppose the photograph should remain with the petition and go to the jury, even though no proof was offered showing its genuineness, who can say what its effect might be on the minds of the jury? But whether it is proved genuine and correct or not, we do not think it has any place in the petition. It is no part of the basis

of the suit for damages, and should not be attached to the petition as a part thereof.

2. Exceptions pendente lite were also taken to the overruling of the demurrer to the amendments offered by the plaintiff. The amendments were as follows: "Defendant, when he pretended to set said arm, left the little finger bent down, and bandaged it up in that shape, thereby stopping the circulation in said little finger, causing infection to set in, and causing the same to rot off." "Petitioner further alleges that defendant negligently bandaged his little finger down when he set said broken arm, or attempted to set same, and caused the circulation of the blood to stop, and caused said finger to rot off; and that this was the result of the want of due care, skill, and diligence on the part of defendant, in grossly failing to do his duty as a physician and surgeon." The amendments were not subject to the objection that they set out a new cause of action. They only amplified the original cause of action as set out in the petition.

3. The charge complained of in the 4th ground of the amended motion for a new trial is not identical with the charge which was held, in *Akridge* v. *Noble*, 114 *Ga*. 949 (41 S. E. 78), not to be ground for a new trial as against the objections then raised thereto; nor should a charge of that character be given when there is no evidence upon which to predicate it. Some of the other charges complained of were taken either from the opinion in that case, or from what was copied in the opinion from a text-writer on medical jurisprudence. The code lays down the rule that a person professing to practice surgery for compensation must bring to the exercise of his profession a reasonable degree of care and skill; and that any injury resulting from a want of such care and skill will be a tort for which a recovery may be had. Civil Code (1910), § 4427. This briefly states the standard by which the conduct of a person claimed to have been guilty of malpractice as a surgeon may be tested. In determining the question of reasonable care and skill the jury may consider the place of the operation, the circumstances surrounding it, the situation of the defendant with respect to the operation, and all the facts and circumstances which may be shown by the evidence and which may throw light on the ultimate question: did the defendant, or did he not, use reasonable care and skill in the performance of the operation?

In the *Noble* case, in connection with a charge substantially as above stated, certain other expressions were used, such as a reference to the skill and care used by "average" surgeons in the general neighborhood in performing similar operations. But taken altogether, the standard declared by the code was emphasized. If expert evidence is introduced tending to show the recognized method of performing an operation, or the manner in which it should be performed, it may be considered along with other evidence throwing light on the question. But we prefer the standard required by the code to a comparison with an "average" surgeon. The charge complained of in the first ground of the amended motion was taken from the opinion in *Akridge* v. *Noble,* supra. In formulating a charge, however, we think it best not to state that the skill of a surgeon includes an ability to perform the operation in an "approved" way. While this expression was used by the learned Justice in writing the opinion in the case cited, and may have been unobjectionable when so used, when employed in a charge to the jury it might have raised a question in their minds as to the meaning of the word "approved," and as to by whom the approval should be made. Another excerpt from the opinion in the case cited, which was copied from Taylor's Medical Jurisprudence, was to the effect that surgeons should keep up with the latest advance in medical science, and use the latest and most improved methods and appliances, having regard to the general practice of the profession in the locality where they practice. Here again the quotation is more suited to the reasoning of an opinion than to a charge to a jury, especially in the absence of evidence as to any late advances in medical science, or late and improved methods and appliances in such use. From the report of facts and the discussion in the *Akridge* case, it will be seen that the objection made to the charge complained of in the fourth ground was not as to the use of the word "average," or for lack of evidence as to what skill was possessed and used by average surgeons in the general neighborhood, but on the ground that the removal of a pad or sponge from the body of the patient was not a part of the operation and did not require any surgical skill, and that the issue was not one of skill on the part of the defendant in the performance of the operation, but of negligence in not removing the pad or sponge after the operation; thus seeking

to differentiate between skill and care in the removal of the sponge.

4. According to the decision of this court in the case of *Louisville & Nashville R. Co.* v. *Ledford*, 142 *Ga.* 770 (4), 773 (83 S. E. 792), it is reversible error to instruct the jury that "Where witnesses agree as to the material facts testified to by them, slight discrepancies as to collateral, attendant facts affords no sufficient legal reason for discrediting their testimony."

5. Error is assigned upon the following excerpts from the charge of the court: "There is no allegation here of pain and suffering upon the part of the plaintiff. This kind of damages may be recovered without proof of any amount—that is, the plaintiff would not be required to prove any amount of damages that he has sustained, or give you any data, more than to show the infliction of the injury and the amount of deformity, or the amount of pain and suffering from which you could gather it." "The only guide in determining the amount of these damages, such as are presumed to flow from a tortious or wrongful act, is the enlightened consciences of impartial jurors, acting under the sanctity of their oaths, with a view, from all the facts and circumstances as developed by the evidence, with a view of simply compensating the plaintiff for his injury, and at the same time doing exact fairness and justice to the defendant." It is insisted that these charges are inapt and not authorized by the pleadings, there being no express allegation as to *pain* and *suffering*, and that the charges were misleading and not authorized by the evidence or the facts of the case. It is true that the petition does not in express terms allege "pain and suffering," nor does the evidence in so many words state it; but, under the allegations of the petition and the evidence thereunder, "pain and suffering" are involved in the case; and this being so, the charge complained of was applicable except as herein pointed out.

The petition alleged in substance that the defendant negligently set the plaintiff's broken arm, and in setting it broke the board, a part of which stuck in the flesh above the elbow, and part of it stuck in the flesh at the root of his thumb, and that the defendant bound it so tightly that great sores came all over the hand and fingers and at the elbow where the board went into the flesh, finally covering the entire arm, and that "the little finger rotted

off" and plaintiff's whole hand became disfigured, with the result that he has no use of his hand, nor has he any use of his fingers on his right hand, nor his thumb, and will have no use of same for the rest of his life; that in setting the arm defendant left the little finger bent down and bandaged it in that shape, thereby stopping the circulation in the little finger, with the result above stated. There was evidence tending to support the allegations of the petition; and to show that the plaintiff's mother could not massage the hand as directed by the defendant, "because the child cut up so." Under the allegations and proof, we think the court was authorized to charge the jury the rule as to estimating damages where pain and suffering are involved in a suit brought for a tortious act. And inasmuch as the court laid down the correct rule in such case, we need not discuss the use of the word "presumed," as employed in the charge, further than to say that it was unnecessary.

6. On the trial of the case the court allowed, over the objection of defendant, a witness for the plaintiff, in answer to the question, "State whether or not this is a correct photograph of the hand at this time," to answer, "Yes, sir." It is insisted that the photograph, which was later admitted, and the evidence relative to it, was irrelevant and immaterial. We think both were admissible. It is largely a matter of discretion whether the court allows profert to be made of one's person or any portion thereof on the trial of a case, in order to illustrate the injury and the extent thereof. Witnesses are sometimes permitted to describe such injuries in detail. And if this be admissible, we think a photograph of a wound, which has been proved to be correct, and which accurately illustrates and is a description of it, is admissible in evidence for the same purpose, in connection with other evidence tending to show that the condition of the injured member at the time when the photograph was taken resulted from the alleged tort.

7. Complaint is made of the following charge: "You are the judges of the credibility of the witnesses introduced upon the trial of the case, with this instruction from the court: that every witness is presumed in law to be credible, unless he is impeached by some means known to the law. By this you are to understand that you are not to arbitrarily disregard the testimony of

any witness, but, taking the testimony of each and every witness, giving it such weight as you think it entitled to from all the facts and circumstances of the case, and its connection with the other proven testimony, use the testimony of each witness in determining the truth of the issue." This charge is not entirely accurate. The credit of a witness as such may be involved without involving his impeachment, such as considering his relationship, bias, etc., as affecting his credibility. And the language, "use the testimony of each witness in determining the truth of the issue," is also inapt. The court perhaps meant that the jury might "consider" the testimony of each witness, etc., in arriving at the truth of the issue. As the case goes back on other grounds for a new trial, it would be better for the trial judge not to use such expressions on the second trial.

*Judgment reversed. All the Justices concur, except Beck, J., absent.*