27278. KUTTNER *v.* SWANSON.

Decided March 13, 1939. Rehearing denied March 30, 1939.

*J. E. Feagin, Douglas, Andrews & Cole,* for plaintiff.
*Bryan, Middlebrooks & Carter, John A. Dunaway,* for defendant.

Per Curiam. Mrs. Max Kuttner brought suit against Dr. Cosby Swanson for damages alleged to have been sustained by her through the malpractice of the defendant in administering x-ray treatment to her, it being alleged that he was negligent (a) in failing to make a test of plaintiff's skin in order to determine the quantity of x-ray radiation plaintiff's skin could safely absorb; (b) in administering three of the x-ray treatments to plaintiff within fifteen days and in failing to wait at least ten days between each of the treatments; (c) in exposing her neck and chest to x-ray treatment for three minutes and fifty seconds instead of two minutes; (d) in burning the skin of her neck, chest, and chin in exposing the same to the x-ray radiation as aforesaid; (e) in failing to use a quantity

meter and a quality meter to measure the radiation; (f) in using x-ray treatment for the plaintiff's condition; (g) (this ground abandoned in court); (h) in leaving at frequent intervals the room occupied by the plaintiff while the treatment was being administered. The defendant denied liability and alleged in his answer that the treatment administered was in the exercise of the care and skill required by law. The jury returned a verdict in favor of the defendant, and the exception here is to the judgment overruling the motion for new trial as amended. Inasmuch as it is the view of the majority of the court that the case should be reversed on certain special grounds of the motion for new trial, it is deemed unnecessary to pass on the general grounds.

■ ■ The first special ground, designated as 4, complains that the court, after charging that a physician must bring to the exercise of his profession a reasonable degree of care and skill, erred in charging as follows: "This standard of care, this degree of care and skill or diligence is defined in law to be such care and/or skill and/or diligence as, under the law or similar conditions and all the surrounding circumstances is ordinarily employed by the profession generally in this locality." It is contended (a) that the court erred in defining the exercise of care and skill as that used by the profession generally in the same *locality,* whereas the true test is the standard of care, skill or diligence used by physicians generally whether in or near Atlanta, the locality in which the treatment in the present case was administered. The Code, § 84-924, provides: "A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had." This section is also applicable to a physician who specializes in the administering of x-ray treatment. The standard prescribed by the Code section, "when applied to the facts and circumstances of any particular case, must be taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by the profession generally." *McLendon* v. *Daniel,* 37 *Ga. App.* 524, 528 (141 S. E. 77); *Hughes* v. *Weaver,* 39 *Ga. App.* 597 (148 S. E. 12); *Radcliffe* v. *Maddox,* 45 *Ga. App.* 676, 680 (165 S. E. 841). The physician must not only have the

requisite care and skill, but must exercise these qualifications. *Hinkle* v. *Smith,* 12 *Ga. App.* 496 (77 S. E. 650) ; *Grubb* v. *Elrod,* 25 *Ga. App.* 108 (102 S. E. 908) ; *McLendon* v. *Daniel,* supra; *Richards* v. *Harpe,* 42 *Ga. App.* 123 (11) (155 S. E. 85) ; *Chapman* v. *Radcliffe,* 44 *Ga. App.* 649 (162 S. E. 651). The true rule is that the reasonable degree of care and skill prescribed in the Code is not such as is ordinarily employed by the profession in the locality or community. It is a question of fact for the jury to determine what is reasonable care and skill under the circumstances, and in so determining the jury may consider the degree of care and skill practiced by the profession generally in the locality or the community. In *Akridge* v. *Noble,* 114 *Ga.* 949 (41 S. E. 78), cited and relied on by counsel for defendant in error, it was not held that the care and skill required of a physician is that employed by the profession generally in the locality or community. See the comments of the Supreme Court on that case in *Pace* v. *Cochran,* 144 *Ga.* 261 (86 S. E. 934). See also *Fincher* v. *Davis,* 27 *Ga. App.* 494 (108 S. E. 905) ; *McLendon* v. *Daniel,* supra; Gramm *v.* Boener, 56 Ind. 497, 501; McCracken *v.* Smathers, 122 N. C. 799 (29 S. E. 354). The charge as given was, therefore, error for the reason assigned.

 It is further contended that such portion of the charge was error, in that the court instructed the jury that the defendant was to be absolved if he brought to the exercise of his profession either the care or the skill or the diligence ordinarily employed by the profession, whereas under the law the physician must both possess and exercise a reasonable degree of care *and* skill. The charge of the court, although it used the expression "and/or" between the words "care" and "skill," was calculated to instruct the jury that the rule would be satisfied if the defendant had used either care *or* skill and not both. If "and" and "or" are interchangeable, as held by the Supreme Court in *Davison* v. *Woolworth Co.,* 186 *Ga.* 663 (198 S. E. 738, 118 A. L. R. 1363), the charge was an instruction to the jury that the rule requires of a physician the exercise of either care or skill, and that if the physician brought to bear only a reasonable degree of skill he was not required to bring to bear any degree of care, or that if he brought to bear a reasonable degree of care he was not required to bring to bear any degree of skill. *Richards* v. *Harpe,* supra. The charge was error for the reason assigned.

■ It is further contended that the portion of the charge, together with the sentence immediately preceding, was error for the reason that it purported to charge the test applicable to a physician or surgeon, whereas the court should have charged that, the defendant being a specialist, as shown by the pleadings and the evidence, he should be held to the standard of care and skill employed by specialists generally. The defendant, while a specialist, was nevertheless a physician, and the care and skill to be possessed and exercised by him, whether in treating with medicine or x-ray, is that ordinarily employed by physicians generally under similar conditions and like circumstances. The failure to charge as contended for was not error for the reason assigned.

■ Ground 5 is similar to ground 4(a) dealt with in the first division of the opinion, and is controlled by the ruling thereon.

■ Ground 6 complains that the charge of the court that the plaintiff would not be entitled to recover if, by the exercise of ordinary care, she could have avoided the consequences of the defendant's negligence, if any, was inapplicable to the facts of the case and that such charge was therefore error. There being no evidence whatsoever from which it could be inferred that the plaintiff did, or omitted to do, anything that could be chargeable to her as negligence contributing to the injury, there was no evidence that she failed to exercise ordinary care, or that she, in the exercise of ordinary care, could have prevented the injury. The court erred in charging the jury that a duty was upon the plaintiff to exercise ordinary care to prevent the consequences of the defendant's negligence, if any, and that if she failed to do so there could be no recovery.

■ The court charged the jury as follows: "Now, it is contended by the defendant, gentlemen, that, in addition to the contentions to which I have already directed your attention, any injury that the plaintiff may have received, as already stated, was not due to the negligence of the defendant, but was due to idiosyncrasies in the plaintiff herself, due to the susceptibility or hypersensitiveness of the plaintiff to x-ray exposure, and that this was the direct, proximate, and producing cause of any injuries that she may have received. Now, gentlemen, the plaintiff denies this, and as to what the truth is as to this issue, you will determine. Gentlemen, you consider as to whether or not she was hypersensitive, if she had an

idiosyncrasy that in and of itself produced and brought about the condition which she claims to have suffered. And you determine, gentlemen, as to whether or not this was known by the defendant, or in the exercise of ordinary care on his part should have been known by him. The defendant denies this, and the burden as to that, gentlemen, is on the defendant to prove that, the law being that a party asserting a fact has the burden of proving the same to be true." It is contended by the plaintiff in error in the seventh special ground of her motion for new trial that, in connection with other portions of the charge as to the burden resting on the plaintiff to prove the allegations of her petition, it was confusing and misleading to the jury, and had the effect of instructing them that the only burden on defendant was to prove that the plaintiff was idiosyncratic or hypersensitive, and that the burden was on the plaintiff to prove that she could not, by the exercise of ordinary care, have avoided the consequences of the defendant's neglignce, if any. This was a correct statement of the law with respect to the contention of the defendant, and was not error for the reason assigned.

■ Grounds 8 and 13 may be considered together. Ground 8 assigns error on the charge of the court, "The next question, if you find that the defendant was negligent in all, some or any of the particulars charged by the plaintiff in this petition here, why then you would consider and determine as to whether or not such negligence, if it existed, was a direct and proximate and producing cause of injury to the plaintiff. Now, the proximate cause of an event is that cause which, in natural and continuous sequence, unbroken by any new, independent cause, brings about an occurrence, produces an event, and without which the event or occurrence would not happen;" it being contended that it was inapplicable, inasmuch as there was no evidence of an intervening cause, and that under the charge the jury would naturally conclude that idiosyncrasy of the plaintiff, if such existed, was a new and independent cause which would destroy the causal relationship of the defendant's negligence, if any, to the plaintiff's injury, whereas, as contended by the plaintiff in error, the idiosyncrasy is only a condition and not a cause. Under the evidence the jury was authorized to find that the plaintiff had an idiosyncrasy, and that it was not only a condition but a cause of her injury, inasmuch as the three doses of x-ray administered were not of themselves exces-

sive or such as to produce injury in the absence of idiosyncrasy. Accordingly, the charge was applicable under the facts of the case, and not error for any reason assigned. Ground 13 excepts to the same portion of the charge as being error for the reason that the court should have charged that if the idiosyncrasy existed and could have been foreseen by the defendant, the idiosyncrasy would not destroy the causal connection between the defendant's negligence, if any, and the injury. The instruction here complained of was a correct definition of proximate cause, and was not subject to the objection made, inasmuch as elsewhere in the charge the court instructed the jury as to the duty of the defendant, in the exercise of ordinary care, to anticipate or foresee the idiosyncrasy of the plaintiff.

■ The ninth special ground assigns error on the following charge of the court: "Now, gentlemen, a party may be impeached, that is, a witness, any witness, may be impeached by disproving the facts testified to by such party or witness, if the party is a witness, a witness may be impeached by proof of contradictory statements previously made by such party or witness as to matters relevant to their testimony and to the case. Where a party or witness, if the party is a witness, shall be successfully contradicted as to a material matter, the credit of such witness as to other matters is entirely for you; but if a witness shall swear wilfully and knowingly falsely, the testimony of such witness should be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence. The credit to be given the testimony of a witness when he is impeached is for the sole determination of you gentlemen." It is contended that the charge was error (a) for the reason that the evidence did not authorize an inference that the plaintiff had wilfully and knowingly sworn falsely and the instruction was inapplicable, and (b) that it was error in that the court did not qualify the statement, that, if a witness shall swear wilfully and knowingly falsely, the testimony of such witness should be disregarded entirely unless corroborated, etc., by the provision of law that such false swearing, wilfully and knowingly, must be as to a material matter. Under the evidence this charge was not error for either reason assigned. The instruction, properly construed, did not fail to instruct the jury that such testimony must relate to a material matter.

■ Ground 10 complains that the court erred in permitting counsel for the defendant to read to the jury, for the purpose of impeachment, certain portions of the testimony alleged to have been given in plaintiff's deposition before a court commissioner, it being contended that such testimony was inadmissible because there was no proof of her having made the answers shown in the deposition, and that she, in fact, denied making some of the answers. The depositions in another case, which have merely been opened by order of the court, but never introduced in evidence, are not admissible in this case. The plaintiff denied making some of the answers certified to by the commissioner. There must be testimony that the plaintiff testified to the answers contained, or there must be a judgment of the court that she did, before they would be admissible. The commissioner is presumed to do his duty, but the presumption is rebuttable. It is not the intent of the law for a court to have to try out issues involved in other cases. In the case in which the depositions were taken they could have been attacked and might never have been admitted in evidence. The testimony of the plaintiff that she did not make certain answers rebutted the presumption that the commissioner did his duty, and in the absence of confirmation by him it was rendered ineffective. This, of course, is true where the depositions were not introduced in evidence under an adjudication that the plaintiff did actually give the answers recorded.

■ Ground 11 assigns error on the refusal of the court to permit counsel for the plaintiff to ask an expert witness the following hypothetical question: "Doctor, assuming as a fact that an individual be given from six to eight erythema doses in three treatments within a period of ten or twelve days, would that produce an x-ray burn?" It is contended that the question was a proper one, inasmuch as another expert witness had testified that in his opinion the skin of the plaintiff had received such a quantity of radiation. Such other witness did not, however, testify that in his opinion the *defendant* had administered such doses, but only that she had received a total of six to eight erythema doses, and that it may have been over a period of years. The defendant denied that he had given more than a total of three-sevenths of an erythema dose, and there was no evidence to the contrary. The ground of objection was good, for the reason that the evidence did not authorize the assumption of the fact involved in the question.

■ Ground 12 complains that the court erred in its charge by unduly stressing the defendant's contentions on the issues and facts involved in the trial. In the present case the plaintiff contended that the defendant was guilty of numerous acts of negligence, and, while the court charged in considerable detail as to the defendant's defense in respect thereto, we think that under the facts and issues presented it could not be said that the charge was error for the reason assigned, especially as it appears that the court also fully stated the contentions of the plaintiff.

■ Ground 14 complains of a portion of the charge of the court with reference to the alleged idiosyncrasy of the plaintiff, and as to the nature of the duty resting upon the defendant to foresee or detect such condition, it being contended that the court erred in charging that only ordinary care was required of the defendant in that respect, whereas under the law he is bound to exercise reasonable care and skill. The uncontradicted evidence showing that by the exercise of reasonable care and skill it could not be determined in advance of x-ray treatment whether or not a patient was idiosyncratic or hypersensitive, the charge could not be said to have been harmful to the plaintiff.

*Judgment reversed. Stephens, P. J., and Felton, J., concur. Sutton, J., dissents.*

SUTTON, J., dissenting. I concur in the rulings stated in divisions 1(c), 4, 5, 6, 8, 9, and 10 of the majority opinion of the court, but dissent from the rulings made in divisions 1(a), 1(b), 2, 3, and 7 of the opinion for the following reasons.

■ The Code, § 84-924, provides: "A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had." I think that this section is also applicable to a physician who specializes in the administering of x-ray treatment, and, as shown by citations in the majority opinion, the standard prescribed by the Code section, "when applied to the facts and circumstances of any particular case, must be taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances is ordinarily employed by the profession generally." Furthermore, the physician must not only possess the requisite care

and skill, but must exercise these qualifications. I think, however, that under the circumstances of the present case the charge complained of, even if it could be said to have been technically inaccurate in the use of the expression, "in this locality," was harmless to the plaintiff. The word "generally" in the expression, "employed by the profession generally," does not seem to have been construed by the appellate courts of this State. It was used by the courts in defining what is meant by "reasonable care and skill," as used in the Code, and it is contended by the plaintiff in error that, as it has been held by the courts of this State that the care and skill must be that ordinarily employed by the profession *generally,* the test would not be that care and skill used by physicians in a given locality, as charged by the court in the present case, but is that care and skill which must be ascertained from a wider and more general practice of the profession. It could not be reasonably contended that the investigation should determine the universal practice of physicians. I think that a reasonable construction of the word "generally" would be that it would not necessarily have to refer to the practice of the profession *geographically,* but could be descriptive of a practice which is engaged in by physicians in a substantial aggregate in one area. The care and skill exercised by physicians in a populous community like New York or Chicago or Philadelphia would afford a better basis for determining what is a reasonable exercise of care and skill than might be ascertained from an investigation of the practice of physicians in an area many times more extensive but containing only a small fractional proportion of a metropolitan population. Judicial cognizance may be taken of the fact that Atlanta is now a metropolis, and if a given physician in that city exercises the care and skill which is ordinarily employed by physicians therein, it may fairly be said that he measures up to the requirements laid down by the statute and by the interpretation by the appellate courts of this State in stating that the reasonable care and skill must be that which is ordinarily employed by the profession generally under similar conditions and like circumstances.

It is further contended by plaintiff in error that such portion of the charge was error, in that the court thereby instructed the jury that the defendant was to be absolved if he brought to the exercise of his profession either the care or the skill or the diligence

ordinarily employed by the profession, whereas under the law the physician must both possess and exercise a reasonable degree of care *and* skill. The objection is based on the use by the court of "and/or" between the words "care" and "skill," immediately after stating that "this standard of care, this degree of care and skill or diligence is *defined* in law to be," etc. (Italics mine.) The Code prescribes *what* must be exercised, namely, care and skill, not the utmost but "a reasonable degree" thereof. The effect of the court's charge was that whether care be under consideration, or skill be under consideration, each of those things, whether singly or taken together, must in *quality* or *nature* be of that standard which is employed by the profession, etc. In the sentence immediately preceding that to which objection is taken, the court correctly charged *what* the physician must bring to the practice of his profession. I do not think that the objection was well founded.

■ The second division of the majority opinion deals with the fifth special ground of the motion for new trial which is similar to the objection dealt with in division 1 (a) of the majority opinion. This ground is, in my opinion, without merit for the reasons mentioned by me in division 1 (a) of this dissenting opinion.

■ Ground 6 complains that the charge of the court, that the plaintiff would not be entitled to recover if, by the exercise of ordinary care, she could have avoided the consequences of the defendant's negligence, if any, was inapplicable to the facts of the case, and that such charge was, therefore, error. The plaintiff alleged in her petition that she was free from negligence and could not, by the exercise of ordinary care, have avoided the consequences of the defendant's alleged negligence. The defendant in his answer denied such allegations. In this state of the pleadings, and there being evidence that idiosyncrasy or hypersensitiveness could not be determined, in advance of x-ray treatment, even by a physician or specialist, the charge of the court in the respect mentioned was not error.

■ Ground 10 complains that the court erred in permitting counsel for the defendant to read to the jury, for the purpose of impeachment, certain portions of the testimony alleged to have been given in plaintiff's deposition before a court commissioner, it being contended that such testimony was inadmissible because there was no proof of her having made the answers shown in the deposition,

and that she, in fact, denied making some of the answers. It is shown by the record that the deposition bore the certificate of the commissioner that it had been taken in a named cause, and that the plaintiff was then represented by one of her counsel in the present case, that the deposition was taken in his law office on January 19, 1937, and that the commissioner certified that the questions and answers were taken down and reduced to writing by him. It was shown that the deposition was filed in the superior court of Fulton County in February, 1937, and under an order of court was opened in open court on January 4, 1938, the day after the present case went to trial. It thus appears that the deposition was filed in and came from the proper custody, and must be taken prima facie as being a correct report of her testimony. In the absence of a showing of fraud or irregularities in connection with the taking and return of the deposition into court, the deposition was admissible in the present case, not as evidence, but for the purpose of impeachment. Moreover, the plaintiff shows by her testimony in the present case that she did give her deposition before the commissioner at the time named, contending only that some of the purported answers were not made by her, thereby raising an issue for the jury as to whether or not such answers, prima facie deemed to have been made, were in fact given by her at the taking of the deposition.

Furthermore, I am of the opinion that under the law and the evidence the verdict of the jury in favor of the defendant was authorized. The evidence adduced on the trial of the case was lengthy and included much data as to the use of x-ray in the treatment of skin diseases, but need not be set forth in detail. The jury was authorized to find that the plaintiff in November, 1935, was treated by the defendant for an eruption on her chest, shoulders, arms, and body; that she was given internal medication and a lotion was prescribed and used during the months of November and December of that year; that in January, 1936, she again consulted the defendant, and x-ray treatment was advised for what, according to the defendant's testimony, he diagnosed as dermatitis or inflammation of the skin; that on January 7, January 11, and January 15, he gave her x-ray treatment of the skin of her chest with an exposure of two minutes on each occasion, each dosage consisting of one-seventh of an erythema, that is, one seventh of

a sufficient quantity of radiation to produce a mild but harmless redness of the skin. The plaintiff testified that on the third occasion she received treatment for three minutes and fifty seconds, and that a third-degree burn resulted therefrom and she was injured in certain particulars; that after the second treatment her throat and mouth became dry and she promptly so informed the defendant, but that he stated that she was probably catching the mumps, and that he was negligent in giving her the third treatment of x-ray under such circumstances. The defendant testified that the dryness complained of had no connection whatever with the x-ray treatment previously administered, and that the condition of her mouth and throat in no way contributed to the burn or x-ray changes on her chest subsequently. The uncontradicted evidence was to the effect that even if the defendant administered x-ray treatment for a period of three minutes and fifty seconds on the third occasion, in addition to the treatment on the two previous occasions, the dosage was not of itself excessive; that the defendant had the necessary knowledge and skill in x-ray treatment, and that such treatment is generally recognized by the profession as being proper.

Without setting forth all the evidence in detail, it is deemed sufficient to say that the jury was authorized to find that none of the allegations of negligence was supported. As to allegation designated by (a) in the statement of the pleadings, the undisputed testimony was that there is no way of determining in advance the quantity of x-ray radiation that a patient might receive with impunity; that some individuals, in rare instances, have an idiosyncrasy or hypersensitiveness to x-ray, and that it would be imprudent and unprofitable to attempt to test for such allergic nature by giving an advance or preliminary dosage, because the effect of radiation is cumulative; (b) it was shown that three treatments in the intervals employed by the defendant would not be inconsistent with good precaution and practice; (c) it was shown that even if the defendant had exposed the plaintiff to x-ray treatment for three minutes and fifty seconds on the third occasion, which he denied, no harm would have come to the plaintiff unless she had been idiosyncratic or hypersensitive, a condition occurring only in exceptional cases among patients; (d) the defendant denied that he burned, by the treatment administered, the plaintiff's skin on her

chest, neck or chin, and asserted that the burn was due to her idiosyncratic condition, unknown to him and incapable of determination in advance; (e) it was shown that the requisite care and skill in x-ray treatment did not require the use of a quantity or quality meter to measure the radiation being given a patient; that it was formerly the practice to endeavor to compute by a formula the quantity of radiation given off by an x-ray machine, but that now, as a machine is used, it is so set or calibrated that its release of radiation is automatic or fixed, so that one administering x-ray treatment is concerned with only two variable factors, one the distance from the x-ray tube to the skin of the patient and the other the time of exposure. It was shown that the machine used by the defendant was of modern and efficient type, the kind generally in use in Atlanta and by the profession generally, and that it was inspected with proper frequency by an expert engineer, a graduate of Georgia Tech, who testified that he had never found it out of order, and that it was in correct adjustment and condition at the time of the treatment administered to the plaintiff by the defendant, and that the only change it had undergone was a technically slight decrease of radiation, because of the gradual reduction of tube efficiency, although the machine was properly calibrated or adjusted; (f) there was evidence that the treatment was proper, and used by the profession generally, for the skin trouble with which the plaintiff was afflicted; (h) the undisputed evidence showed that it was unsafe for a physician or x-ray technician to remain in the room where radiation was being given off, inasmuch as the cumulative effect of the radiation would be dangerous to such person, but that the defendant's office arrangements were such as to enable him to watch from a small room, only four feet away from the head of the patient receiving the x-ray treatment, there being a lead-lined wall between the two rooms, and the defendant looking at the patient through a small lead-glass window in the wall, and it was shown that the defendant did in fact watch and observe the patient by such method in the present instance, and that at the end of two minutes he personally caused the current to be cut off.

The defendant testified that when the patient came to him she stated that she had never had any x-ray treatment previously, but there was evidence that she had been injured in an automobile

accident and had had an x-ray examination of her chest. While, as above shown, there was evidence that the manner in which the defendant treated the plaintiff was, as to care and skill, that used by the physicians of Atlanta, a metropolitan city, and it is contended by the plaintiff that the care and skill to be employed is that which is exercised by physicians generally, not merely in Atlanta, the plaintiff, upon whom rested the burden of proving negligence, offered no evidence that the treatment, as administered, was not in accordance with the exercise of care and skill by physicians generally.

It is further contended by the plaintiff in error that the jury should have applied in this case the doctrine of res ipsa loquitur and should have found thereby that the defendant was negligent. This doctrine is not applicable merely because of the fact of injury. It is applicable only where *"there is nothing to indicate an external cause,* but the peculiar character of the accident is *sufficient within itself* to indicate that it must have been brought about by negligence on the part of some one, and where the most reasonable and probable inference which can be rationally drawn from the happening of such an event is that it would not and could not have taken place had not the person charged with furnishing or maintaining the instrumentality causing the accident been guilty of the particular acts or omissions set forth by the plaintiff as constituting the actual cause." (Italics mine.) *Macon Coca-Cola Bottling Co.* v. *Crane, 55 Ga. App.* 573 (190 S. E. 879). In the cited case it was further held that it must be shown by the plaintiff in the first instance "that the accident was of a kind which *in the absence of proof of some external cause,* does not ordinarily happen without negligence." (Italics mine.) In the present case it could not be said that there is nothing to indicate an external cause. The evidence shows that an external cause was indicated by the idiosyncrasy or hypersensitiveness of the plaintiff, as positively testified by the defendant and by no one denied, and, accordingly, it could not be said that "the most reasonable and probable inference which can be rationally drawn from the happening of such an event is that it *would not and could not* have taken place had not the person charged with furnishing or maintaining the instrumentality causing the accident been guilty," etc. (Italics mine.) If the plaintiff was idiosyncratic or hypersensitive, the

injury could have happened as well from that condition as from the use of the radiation as administered by the defendant. The thing, that is, the injury, does not "speak for itself" that the use of the machine caused the damage. "Where there is some intervention or intermediary cause which produces or could produce the injury complained of, the doctrine of res ipsa loquitur is not applicable." *Floyd* v. *Swift & Co.,* 59 *Ga. App.* 154 (200 S. E. 531). While the doctrine was not applicable in the present case, the record shows that the court substantially charged that the jury might, if they saw fit, apply such doctrine.

For reasons shown above it is my opinion that the judgment overruling the motion for new trial should be affirmed. Accordingly I dissent from the judgment of reversal by this court.