22846.   WORD v. HENDERSON et al.

ARGUED APRIL 12, 1965—DECIDED APRIL 20, 1965.

*Hicks & Howard,* for plaintiff in error.

*Reed, Flournoy & Tate, R. M. Reed, Robert E. Flournoy, Edwards, Bentley, Awtrey & Parker,* contra.

DUCKWORTH, Chief Justice. Clearly there was conflict in the evidence as to whether or not the doctor was negligent, making

a jury question as to whether or not he should, from the child's condition at 10 a.m., have made other tests to determine whether the patient's condition was one of post-operative shock and should have closely watched the child until the danger aspects had passed. *Code* § 38-1710. If there is any genuine issue as to any material fact, the right to trial by jury as to those issues can not be denied. *Code Ann.* § 110-1203 (Ga. L. 1959, p. 234). The dissenting opinion, written by Judge Jordan, concurred in by Chief Judge Felton, and Judges Frankum and Russell, is as follows:

"One of the hypotheses stated in Dr. Coker's affidavit was, 'that from the beginning of the checks on said child's pulse rate at 7:35 a.m., on the morning of September 19, 1961, to the final charted check on said child's pulse rate at 10 a.m. on said date, that said child's pulse rate had risen from 78 to 136, *an increase of some 58 heart beats per minute,* and during the same period of time *said child's respiratory rate had increased from 18 to 24 breaths per minute,* having reached a high of 28 breaths per minute at 9:05 a.m. and following said operation and having changed from a high immediately following the operation to a low of 18, 15 minutes later, reaching the final charted respiratory rate measurement of 24 breaths per minute at 10 a.m.'

"It is true that other hypotheses in the affidavit included the shot of Demerol at 10:25 a.m., the child turning an ashen color at 11 a.m., and his death at approximately 12 noon. On the basis of these stated occurrences *after* 10 a.m., together with the child's chart *prior* to 10 a.m., Dr. Coker was able to definitely state that in his opinion the child was in fact suffering from post-operative shock at 10 a.m. But Dr. Henderson's negligence does not depend on whether the child was in fact suffering from post-operative shock at 10 a.m., but rather, on the basis of the knowledge he had at that time, including the information on the child's chart, he should have made other tests and closely watched and checked the patient's condition.

"This is the error made by the majority in construing Dr. Coker's affidavit. While his conclusion that the child was in fact suffering from shock at 10 a.m. might have been based on consideration of all the hypotheses shown in his affidavit, it is

perfectly clear to me that his conclusion that other tests and observations should have been made at 10 a.m. is based solely upon the medical history of the child and the symptoms apparent at that time. In reading and giving consideration to the entire affidavit, as we must do, I think it is certainly susceptible of this construction. This affidavit was given by Dr. Coker on January 31, 1964. The record shows that a second affidavit was given by Dr. Coker on February 6, 1964, in which he attempted to explain what he did and did not intend to say with reference to the alleged negligence of Dr. Henderson. This lends credence to the position that the first affidavit was ambiguous and not entirely clear as to the conclusions of the affiant relative to the actions of Dr. Henderson.

"Where the evidence on motion for summary judgment is ambiguous or doubtful, the party opposing the motion must be given the benefit of all reasonable doubts and of all favorable inferences and such evidence construed most favorably to the party opposing the motion. *McCarty v. National Life &c. Ins. Co.*, 107 Ga. App. 178 (129 SE2d 408).

"The majority states that Dr. Coker's opinion 'was thus simply a "hind-sight" judgment as to what the situation probably was at 10 a.m.' and that 'certainly we cannot hold Dr. Henderson on the basis of a "hind-sight" judgment.' I think this is an unwarranted conclusion because the record clearly shows what the situation was at 10 a.m. with reference to the child's condition. Dr. Coker knew the situation as it existed at that time (on the basis of facts assumed from the records) and Dr. Henderson knew the situation when he last examined the child at 10 a.m. Therein lies the issue to be resolved, for Dr. Coker states the situation warranted further tests and continued attention while Dr. Henderson states that the child suffered no complications and was in excellent condition. This clearly presented a question which was within the province of a jury.

"The majority opinion states that the uncontradicted medical testimony in the record is to the effect that the elevation of pulse and respiratory rates in a child of decedent's age do not indicate post-operative shock so long as they remain within the normal range and that the rates experienced by this child were

within the normal rate. I do not understand this to be correct for while both Dr. Henderson and Dr. Benson testified that the normal rate of pulse rate for a child of this age would be 80-130 per minute, it is uncontradicted that the child's pulse rate rose from 78 to 136 from the time of the operation until 10 a.m. Both doctors testified that a rapid pulse rate and an increase in pulse and respiration are symptoms of shock, along with the skin being wet or clammy, pale skin, anxiety, etc. Nurse Jenkins testified that a 'continuing increase in the pulse rate would be' a symptom of shock. This medical testimony is sufficient to show that the child certainly had some of the symptoms of shock at or prior to 10 a.m. and that the child's pulse rate had in fact exceeded the normal range.

"Whether a physician has used that degree of care and skill required by *Code* § 84-924 is generally a question for the jury's determination. *Norton v. Hamilton,* 92 Ga. App. 727 (89 SE2d 809, 57 ALR2d 426), and cases cited. The same degree of care and skill is required in making a diagnosis as is required in treatment. In determining such issues, the jury may consider *all* the attendant facts and circumstances which may throw light on the ultimate question. *Fincher v. Davis,* 27 Ga. App. 494 (108 SE 905); *Pace v. Cochran,* 144 Ga. 261, 265 (86 SE 934). This includes the right to hear evidence as to facts occurring after the alleged negligence as well as to facts happening prior thereto, for as was stated in *Pilgrim v. Landham,* 63 Ga. App. 451, 455 (11 SE2d 420): 'And where, measured by the method shown by medical witnesses to be negligence, the evidence shows a bad result, it is the province of the jury to say whether the result was caused by negligence.' A physician is required to inform himself of his patient's condition by proper examination such as would ordinarily be made under similar circumstances, and upon failure to do so, he is not relieved by error in judgment of liability for resulting injury. *Howell v. Jackson,* 65 Ga. App. 422 (3) (16 SE2d 45). Dr. Henderson's judgment in this particular situation has been made a material issue of fact by competent medical testimony in the plaintiff's favor.

"It is my opinion that the affidavit of Dr. Coker, construing it in the light most favorable to the plaintiff, was sufficient com-

petent medical testimony to establish a proper standard of measurement for a jury to apply to the evidence in this case to determine whether the defendant doctor exercised a reasonable degree of care, skill, or diligence; and that under the evidence here, when so measured, a jury question was presented as to the issue of the defendant doctor's negligence and whether it proximately caused the death of the plaintiff's child.

"The trial court should not, therefore, have granted the defendant doctor's motion for summary judgment."

After mature study of this case and the dissenting opinion, we think it fully sets forth the law and facts and reaches the proper conclusion. It comprehensively deals with the case, and therefore, we adopt it as the opinion of this court. The Court of Appeals erred in affirming the judgment of the trial court in favor of the defendant Henderson.

*Judgment reversed. All the Justices concur.*