41481.   MURPHY, by Next Friend v. LITTLE.

ARGUED SEPTEMBER 7, 1965—DECIDED SEPTEMBER 30, 1965—
REHEARING DENIED OCTOBER 22, 1965.

*Paul C. Myers,* for plaintiff in error.

*Tillman & Brice, B. Lamar Tillman, J. Lundie Smith,* contra.

DEEN, Judge. ■ There is no serious contention that the evidence in the record would not be sufficient to authorize a finding that the ischemic contracture or withering of the plaintiff's arm resulted from a circulatory embarrassment caused by excessive swelling of the arm within the rigid cast, and that if

the cast had not been unyielding the circulation would not have been shut off when the swelling increased and the injury would not have occurred. From this it is argued that even in the absence of expert medical testimony for the plaintiff a jury question is presented as to whether the defendant's treatment constituted negligence. The question, however, is not whether the treatment resulted in disaster as it all too often may although every precaution known to medical science has been employed, but whether the services were performed in an ordinarily skillful manner. This is a medical question and the proper standard of measurement must be established by the testimony of medical experts. *Pilgrim v. Landham*, 63 Ga. App. 451 (4) (11 SE2d 420); *Shea v. Phillips*, 213 Ga. 269, 271 (98 SE2d 552); *Hayes v. Brown*, 108 Ga. App. 360, 363 (133 SE2d 102).

■ The plaintiff relied primarily on the deposition of Dr. Charles Frankel, which was excluded by the court on the grounds, (1) that no proper foundation had been laid, (2) that he was not qualified as an expert witness, and (3) that he was not familiar with medical standards existing in the profession in Georgia, and especially in Valdosta. Dr. Frankel testified that he was a graduate of Rush Medical School, University of Chicago, with residency in orthopedics at the University of Virginia, Johns Hopkins, and Washington University, that he had a master's degree in orthopedics from the University of Virginia, was certified by the American Board of Orthopedic Surgery, has been in the practice of orthopedics for about thirty years, is presently staff physician of the University of Virginia Hospital, Orthopedic Surgeon and Associate Professor of Orthopedic Surgery at the University of Virginia Medical School, and is a member of the American Orthopedic Association, American Academy of Orthopedic Surgeons, Southern Medical Association, Industrial Surgical Associations, and other professional groups. "Q. Are you familiar with the proper and accepted standards of medical practice that pertain to treatment of fractures generally throughout the United States? A. Yes, sir, I think so. Q. Are you familiar with proper and accepted standards of medical treatment of fractures in small communities? A. Well, I am familiar with what purports to be minimal standards.

And I would not say that standards in small communities would be much different so far as minimal standards are concerned as in any other community. Q. Are you speaking with respect to fracture treatments? A. Yes." After stating the method of treatment, the witness was asked: "Q. Doctor, would the standards of treatment of such a fracture as we have outlined be any different if the general surgeon were treating the fracture rather than an orthopedic specialist? A. The minimal standards would be the same. We would hold the orthopedist to a much higher standard. Q. Now, are the standards which you have outlined or given me before—are these the minimal standards or the standards for an orthopedist? A. No, sir, these are minimal standards, the standards we teach medical students." On cross examination the following occurred: "Q. I believe you stated you attempt to teach your medical students only the minimum standards? A. No, I said that we teach them by the general standards but we expect them to understand the minimal standards. Q. You attempt to teach them the very high standards? A. That's right, but we don't hold them to the highest standards because we know they are only medical students. . . Q. I wish you to assume that there was no orthopedic surgeon at Valdosta, Georgia, in 1957. Now, keeping that degree of skill and care in mind, doctor, I would like to ask you whether or not under the circumstances that existed in Valdosta, Georgia, in February of 1957, should Dr. Little, a general surgeon, who I want you to also assume had never previously seen a Volkmann's contracture, should he have known of any operative procedure with respect to cutting the tissue or covering over the muscles so as to relieve any pressure that might have existed? A. Yes, he should have, since that procedure has been written up in practically all of the textbooks. . . Q. Doctor, you stated that you were familiar with the required standards of medical practice generally. I believe you stated that in your opinion they should be substantially the same in a small community as in a large one, do you of your own knowledge know what the medical standards were in February of 1957 in Valdosta, Georgia, with respect to fracture of the forearm of an 11 year old boy? A. No, sir, I do not.

Q. You have never practiced in Georgia? A. No, sir. Q. You are not personally familiar with the standards that exist in the practice in Georgia? A. No, sir." Again asked about teaching standards, he replied: "We teach what is the highest standard but we also explain to the students that all of them are not going to be able to follow the highest standards but if they are going to practice medicine or surgery that there are standards that they have to follow. And so they are acquainted with the fact that they cannot go below reasonable standards." After testifying that Dr. Bohler and others who developed the so-called skin type plaster cast used on the plaintiff have repeatedly stated that the cast must be split immediately all the way up (which was not done in this case), and after further questioning as to whether this is not up to the attending physician in the exercise of professional judgment, he replied: "I disagree there, sir. One of the fundamentals in the handling of fractures in which you have a right to expect difficulty is that you must lean over backward to avoid this terrible complication. You just simply can't play this type of situation by ear. . . Q. That of course is the high standard which you expect? A. No, sir, it is the way all patients should be handled with this type of fracture. Now, if a surgeon is unaware of the need for this type of thing then he had no business handling this fracture."

Sufficient testimony has been set out to show (a) that Dr. Frankel was well qualified to state his opinion on the procedures employed by Dr. Little unless his lack of personal familiarity with medical practice in Georgia generally and Valdosta in particular was sufficient to disqualify him, and (b) that his testimony, if admissible, would be sufficient to take the case to a jury on the issue of negligence. *Code* § 84-924, which provides the "reasonable degree of care and skill" standard in the practice of medicine does not further circumscribe the requirement by limiting it to locality. In *Kuttner v. Swanson,* 59 Ga. App. 818 (1) (2 SE2d 230) an instruction to the jury that "this standard of care . . . is defined in law to be such . . . as . . . is ordinarily employed by the profession generally in this locality" was held to be error. "The true rule is that the reasonable degree of care and skill prescribed in the Code is

not such as is ordinarily employed by the profession in the locality or community. It is a question of fact for the jury to determine what is reasonable care and skill under the circumstances, and in so determining the jury may consider the degree of care and skill practiced by the profession generally in the locality, or the community." This language from *Kuttner* was quoted and applied in *Mason v. Hall,* 72 Ga. App. 867, 874 (35 SE2d 478). Noting these cases and thereby placing Georgia in the minority group, the following is stated in 70 CJS 950, 952, Physicians and Surgeons, § 43: "Under a statute which expressly requires a physician or surgeon to exercise a 'reasonable degree of care and skill,' the standard is the degree of care and skill which is ordinarily employed by the profession generally and not such as is ordinarily employed by the profession in the locality or community." Where there is testimony on the issue by a medical expert, the question of whether the defendant physican has used that degree of care and skill required by law in attending his patient is generally a question for the jury's determination. *Norton v. Hamilton,* 92 Ga. App. 727, 731 (89 SE2d 809, 57 ALR2d 426); *Pace v. Cochran,* 144 Ga. 261 (3) (86 SE 934). A contrary holding is not required by *Akridge v. Noble,* 114 Ga. 949 (41 SE 78) especially in view of the discussion of that case in *Pace,* supra. Thus, Georgia does not follow the rule required in California and some other States that the expert witness must show personal knowledge of medical standards in the particular locality or community where the alleged tort was committed, nor has it ever done so. Reasons for the more narrow rule which might have obtained in times past, where transportation was difficult, medical schools and hospitals often inaccessible, and doctors licensed to practice with little or no formal training, no longer have any validity. Medical practitioners frequently receive a part or all of their education in States other than the one in which they settle to practice, and, as an example, the defendant here graduated from Johns Hopkins Medical School where the witness took his residency, interned in Baltimore City Hospital, and took his residency at the Mayo Foundation.

There are doubtless areas of medicine where knowledge of proper treatment is limited geographically by prevalence of the

disease or by reason of special facilities for study, but the human race has suffered from broken bones for as long as it has been in existence. Hippocrates wrote a treatise, "On Fractures" in the fourth century B.C. in which he observed that a "blackening of the swelling" of the injured limb might result, among other causes, from the tightness of the bandage. Where medical testimony is required in cases of this kind, an otherwise qualified medical expert familiar with the standards of care considered by the profession generally to represent a reasonable degree of care and skill may testify, and the jury, in determining what weight to ascribe to the evidence, may consider any evidence before them as to the standards of practice in the particular locality or community where the injury is treated. Where the medical testimony offered creates an issue of fact on the question of whether reasonable care and skill was used, the question is for the jury rather than the court. *Word v. Henderson,* 220 Ga. 846 (142 SE2d 244).

The trial court erred in sustaining the objections to the deposition of Dr. Frankel and to the deposition and affidavit of Dr. Kite, and thereafter erred in granting the defendant's motion for summary judgment.

*Judgment reversed. Felton, C. J., and Jordan, J., concur.*

ON MOTION FOR REHEARING.

Objections to hypothetical questions on the ground that they assume facts not in evidence must be timely made in order for the question to be excluded. *Ellis v. Southern R. Co.,* 89 Ga. App. 407 (79 SE2d 541). Certain of the hypothetical questions appearing in Dr. Frankel's deposition assumed codeine had been administered every four hours, which error was called to his attention later in the deposition and he reaffirmed the opinion after consulting the hospital records that the administration of five doses in one day, as shown by the hospital records, "should have alerted somebody." Other hypothetical questions not including facts regarding drug administration, in the opinion of the witness, revealed negligence in the application of the cast prior to any question of follow-up observation. It therefore appears that the fact erroneously assumed, which was corrected later in the deposition, which originally infected some but not all of the questions asked, is not of itself a sufficient reason for

524

disallowing the entire deposition, particularly when no specific objection was urged before the trial court.