## 58361. WILLIAMS et al. v. RICKS et al.

BIRDSONG, Judge.

Medical malpractice. The facts of the case reveal that Mrs. Williams was treated by the appellee, Dr. Ricks, a qualified gynecologist, who surgically performed a hysterectomy upon her. During the operation, Dr. Ricks also removed an ovary. Initially, in her suit, Mrs. Williams complained that Dr. Ricks had performed a battery upon her by removing the ovary without her consent. However, the evidence showed that she did in fact consent to that procedure and Mrs. Williams did not pursue that aspect of

her complaint, nor is it asserted as a basis for appeal.

During the surgical procedures involving the removal of the uterus and the ovary, it was necessary to control normal bleeding and Dr. Ricks utilized ligatures (a form of tied suture) as well as standard sutures (threading with a needle) for this purpose. There are numerous organs and vessels in the part of the abdomen containing the reproductive organs. Two of these vessels are the ureters which are tubes draining the collected urine from the kidneys (one from each kidney) and emptying collectively into the bladder. The ureters are in the back part of the abdominal cavity and it is usual for them to be hidden from view during surgical removal involved in a hysterectomy. The evidence showed that during the operation, Dr. Ricks apparently tied a ligature (loop) inadvertently around the left ureter. Either because of the normal tension of the ligature or because of its subsequent displacement, the ligature formed an obstruction of the left ureter and blocked the flow from the left kidney to the bladder. Because of discomfort caused by pressure and swelling, and following further examination, it was determined on the third post-operative day that some form of blockage existed. Dr. Ricks called a urologist in consultation and that surgeon performed a second operation assisted by Dr. Ricks. The ligature was released and the obstruction relieved, followed by normal urine flow. Several medical expert witnesses testified that complications involving the ureters were not an uncommon occurrence incident to a hysterectomy because of the position of the ureters out of the view of the surgeon. During the trial, appellants' attorney attempted to introduce the contents of two depositions of medical expert testimony called by Mr. and Mrs. Williams. The trial court excluded a series of questions and answers that sought to inquire whether it was the accepted medical procedure to ligate a ureter during a hysterectomy on the ground that the opinion was improperly limited to the medical practice and procedure in the Fulton County and Atlanta area of practice. Appellant also unsuccessfully attempted to inquire of Dr. Ricks whether he considered it good medical practice or surgical procedure for a suture to be placed around the ureter such that it would cause an

obstruction when performing a hysterectomy operation. We observe further the transcript does not contain any opinion evidence that established what was accepted medical practice in the profession generally during a hysterectomy operation or how the procedures followed by Dr. Ricks in comparison therewith were either negligent or otherwise deficient. Finally, the trial court denied the admission into evidence of several bills showing the costs of the several operations performed. It is the refusal of the trial court to admit the testimony of the expert witnesses and the costs of the operations that constitute the basis of the appeal. Additionally appellants argue that because Dr. Ricks allegedly admitted in the presence of Mrs. Williams' husband and her mother that he (Ricks) had made a mistake, the trial court's grant of the appellees' motion for directed verdict was error. *Held:*

1. We find no error in the exclusion of the expert testimony which gave as its predicate the accepted medical practice and procedure of the local area. To establish professional medical negligence the evidence presented by the patient must show a violation of the degree of care and skill required of a physician. Code Ann. § 84-924. Such standard of care is that which, under similar conditions and like circumstances, is ordinarily employed by the medical profession generally. *Bryan v. Grace,* 63 Ga. App. 373 (1) (11 SE2d 241); *Pilgrim v. Landham,* 63 Ga. App. 451 (11 SE2d 420). See *Kenney v. Piedmont Hospital,* 136 Ga. App. 660, 664 (222 SE2d 162); *Hayes v. Brown,* 108 Ga. App. 360 (133 SE2d 102). In this state, the standard of care of the "medical profession generally" has been defined to be broader than the degree of care and skill ordinarily employed by the profession in the immediate locality. *Murphy v. Little,* 112 Ga. App. 517 (2) (145 SE2d 760). Evidence of practice in the Atlanta or Fulton County areas is not sufficient to satisfy the requirement that the expert base his opinion on the practice and care in the medical profession generally. It follows that we perceive no error in the exclusion of opinion evidence that is based upon that faulty predicate in plaintiff's case. Furthermore, even if we consider the evidence of an admission of a "mistake" by Dr. Ricks, this without more is consistent with other testimony that

because of the hidden position of the ureters during a hysterectomy, complications involving the ureters are not uncommon during such a surgical procedure. In the absence of positive evidence of the usual and customary practices and procedures followed by the medical profession generally, the admission would not raise any question of negligence for resolution by a jury. There is no merit in Enumerations 1 and 2.

2. In their third enumeration of error, Mr. and Mrs. Williams argue that it was error for the trial court to exclude a question asked of Dr. Ricks as to whether it was an accepted medical and surgical standard and procedure for a suture (or a ligature) to be placed around a ureter such that it would cause an obstruction when performing a hysterectomy. Objection was posed to that question on the ground that it was not adjusted to the facts of the case and therefore was irrelevant. It was argued by appellees that the question assumed that Dr. Ricks consciously tied off the ureter or alternatively that no situation could exist in which the suturing or ligation of the ureter might be a proper procedure. In effect the objection suggested that it was improper as asked but if reworded might become a proper question. Appellants' attorney attempted once again to ask a similar question which also incurred the objection that the question was not adjusted to the facts, as hypothetical and without factual predicate to support it. Thereafter appellants did not pursue the question and at no time did appellants' attorney make an offer as to what he thought the witness' answer might be.

The right of cross examination is not abridged where cross examination of a witness to irrelevant matters is not permitted. The trial court has a discretion to control the right of cross examination within reasonable grounds and the exercise of this discretion will not be controlled unless abused. *Southwire Co. v. Dept. of Transp.*, 147 Ga. App. 606, 609 (3) (249 SE2d 650). Moreover, a judgment will not be reversed on an exception to the refusal of the trial court to allow a competent witness to testify, where the record does not show what testimony the witness was expected to give. *Clark v. Board of Dental Examiners*, 240 Ga. 289, 292 (240 SE2d 250); *Hickox v. State*, 138 Ga. App. 882 (3) (227 SE2d 829). There is no merit in Enumeration 3.

3. In their last three enumerations of error, appellants complain that the trial court erred in refusing the admission of the bills for services rendered furnished to the Williams by the hospital and an anesthesiologist. As the trial court directed a verdict for the defendants appellees on the issue of liability, any error in the admission or exclusion of evidence relative to the injuries or damages, their extent, or expenses incurred in their treatment, was harmless and affords no grounds for reversal. *Knight v. Atlanta Transit Systems,* 137 Ga. App. 667, 669 (2) (224 SE2d 790); *Parham v. Roach,* 131 Ga. App. 728, 730 (1) (206 SE2d 686), *Maloy v. Dixon,* 127 Ga. App. 151, 156, fn. 2 (193 SE2d 19). These enumerations are rendered moot by the preceding divisions of this opinion upholding the verdict for appellees.

*Judgment affirmed. Quillian, P. J., concurs. Smith, J., concurs in the judgment only.*

ARGUED SEPTEMBER 10, 1979 — DECIDED NOVEMBER 7, 1979 — REHEARING DENIED NOVEMBER 27, 1979 —

*Carter A. Setliff,* for appellants.
*Robert G. Tanner,* for appellees.

SMITH, Judge, concurring in judgment.

I concur in the judgment because appellants failed to provide the jury, through expert medical opinion, with a standard of reasonable care and skill upon which they could have a finding of negligence. *Pilgrim v. Landham,* 63 Ga. App. 451, 455 (11 SE2d 420) (1940). However, I must reject the notion expressed in the majority opinion that "[e]vidence of practice in the Atlanta or Fulton County area is not sufficient to satisfy the requirement that the expert base his opinion on the practice and care in the medical profession generally." While the majority correctly cites *Murphy v. Little,* 112 Ga. App. 517 (145 SE2d 760) (1965), for the proposition that "[i]n Georgia the reasonable degree of care and skill prescribed in the Code for the practice of medicine is not that ordinarily employed by the profession in the immediate locality, but

is that employed by the profession generally," it completely disregards another, equally well-settled rule also set forth in that case. "In determining what is reasonable care and skill under the circumstances, it is the prerogative of the jury to consider what is the degree of care and skill employed by the profession in the locality or community where the action arose." Ibid. See also *Kuttner v. Swanson,* 59 Ga. App. 818, 820 (2 SE2d 230) (1939). Although the majority reaches the proper result in this case, it does so on the basis of a proposition which I do not believe is the law of this state. I, therefore, concur in the judgment only.